CONGER, ADM'R, v. BEAN ET AL.

1. **Administrator:** ACTION BY: EVIDENCE OF PARTY. In an action by an administrator against several defendants upon a note executed by them to the intestate, where one of the defendants withdrew his answer, upon a stipulation that judgment should be rendered against him for a certain amount, it was held that he was no longer a party to the action; and that his testimony in respect to the transaction was competent, and properly admitted on behalf of the defendants.

2. ——: ——: ——. In such case the other defendants could testify to facts not regarded as matters of personal transaction between them and the deceased; and where the defendants introduced portions of the testimony given by the deceased upon a former trial, the plaintiff could only introduce such other portions thereof as tended to explain or modify the part introduced by defendants.

3. **Promissory Note:** CONCEALMENT OF FACTS: RELEASE OF SURETY. Where the maker refused to give a note with a certain person as surety thereon, and the payee afterwards procured the signature of such party as surety, concealing from him the objections made by the maker, such surety will thereby be released from all liability on the note.

4. ——: ——: ——: INSTRUCTION. An instruction based upon evidence which in no proper sense was in the case, was properly refused.

*Appeal from Grundy Circuit Court.*

SATURDAY, APRIL 22.

ACTION upon a promissory note executed to the plaintiff's intestate, H. M. Conger, by the defendants James M. and Charles C. Bean, and James Patterson.

After the defendant James M. Bean had answered, a stipulation was entered into between him and the plaintiff, whereby Bean withdrew his answer, and plaintiff was to have the right to take judgment against him for a certain amount, being less than the amount claimed, and less than the face of the note.

Charles C. Bean, for answer, admitted the execution of the note, but averred that he signed it as surety, and that after the delivery of the note to the plaintiff's intestate, the payee

of the note, without his knowledge or consent, caused the note to be materially altered by obtaining the signature thereto of James Patterson, and by reason of which he, the said Charles C. Bean, became discharged.

James Patterson, for answer, admitted the execution of the note, but averred that he signed the note as surety; that he was induced to do so by the supposition that the principal maker, James M. Bean, desired him to sign it; that in fact, James M. Bean did not desire him to sign it, and so informed plaintiff's intestate; that the plaintiff's intestate fraudulently concealed the fact from the defendant, and thereby misled the defendant; that at the time he signed the note it had been fully executed and delivered, and his signature was procured to it without consideration. The issues formed, as between the plaintiff and the defendants, Charles C. Bean and James Patterson, were tried to a jury, and verdict and judgment were rendered for the defendants. The plaintiff appeals.

*C. W. Mullan*, for appellant.

*Rea & Smythe* and *Boies & Couch*, for appellees.

ADAMS, J.—I. Upon the trial the deposition of James M. Bean was read in evidence by defendants. The plaintiff ob-

1. ADMINIS-
TRATOR;
action by:
evidence of
party.

jected to its being read, upon the ground that the action was being prosecuted by an administrator, and the testimony pertained to a personal transaction between the plaintiff's intestate and the witness, and the witness was a party to the action. The admission of the deposition against the plaintiff's objection is assigned as error.

If James M. Bean was a party to the action, within the meaning of the statute, section 3639 of the Code, his deposition was improperly admitted. That he was technically a party cannot be denied. But after the filing of the stipulation referred to, his rights were virtually concluded. It is true, judgment does not appear to have been rendered against him as the stipulation provided, but it could have been rendered. After

the filing of the stipulation, the rendition of judgment was a mere formality. It appears to us that the case was not essentially different from what it would have been if judgment had already been rendered. Now, if it had been rendered, the action from that time would have been simply an action against the other defendants. It would have been no more an action against James M. Bean than if it had been dismissed as to him. In our opinion, he was not a party within the meaning of the statute, and the court did not err in admitting his deposition.

II.   Charles C. Bean was examined as a witness in behalf of himself. After having stated that he signed the note in his own house, he was asked, and allowed to state who were in the house at that time. This was objected to by the plaintiff as calling for testimony in respect to a personal transaction between the witness and the plaintiff's intestate; but in our opinion it could not properly be so regarded.

III.   The defendant read in evidence portions of the testimony of the plaintiff's intestate, as his admissions, given upon a former trial. The plaintiff then offered the remainder of the testimony of his intestate. The court admitted only a portion of the remainder. The plaintiff claims that the court erred in not admitting the whole.

Section 3650 of the Code, provides that when part of an act, declaration, conversation, or writing, is given in evidence by one party, the whole on the same subject may be inquired into by the other party. But we are unable to see that the testimony excluded, would, if it had been admitted, have had any tendency to explain or modify the part introduced. It could not, we think, be said to be upon the same subject.

IV.   The plaintiff asked the court to instruct the jury that unless Patterson was induced to sign the note by fraudulent representations, made to him by H. M. Conger, for the purpose of inducing him to sign the note, he could not escape liability. The court refused

2. —: —: —.

3. PROMISSORY note: concealment of facts: release of surety.

to so instruct, and instructed, in substance, that Patterson could not escape liability, unless he was induced to sign the note by fraudulent representations or concealment of the true facts. There was evidence tending to show that the intestate asked James M. Bean to give a note with Patterson as surety; that Bean refused to do so, and refused to ask Patterson to sign it, and agreed only to give a note with his brother, Charles C. Bean, as surety; that the intestate immediately upon receiving the note proceeded to obtain, not only Charles C. Bean's signature, but also Patterson's signature; that he did so in the absence of James M. Bean, and without informing Patterson that the principal, Bean, had refused to give a note with him as surety. If the fact was, as testified to by the principal, then the effect of obtaining Patterson's signature was to release the principal, and to prevent Patterson, if he was compelled to pay the note, from looking to the principal. It was clearly the intestate's duty, if the principal refused to give a note with Patterson as surety, not to go to Patterson and ask him for his signature, or if he did do so, to disclose fully to Patterson the fact that the principal had refused to give a note with him as surety.

In our opinion it was not necessary for Patterson to show that he was induced to sign the note by fraudulent representations. It was sufficient, we think, if the intestate, at the time he obtained Patterson's signature, acted in bad faith in concealing from him what he was entitled to know, and what if he had known, would probably have prevented him from signing the note. We see no error in the ruling of the court upon this point.

V. The plaintiff asked an instruction in these words: "If you find that Charles C. Bean knew, or had been informed, that Patterson was to sign the note as surety, and that after having received such knowledge or information he signed said note without objection on his part to Patterson's signing the same, such fact—that is the signing of the note with such knowledge and without ob-

jection—will in law amount to a consent on the part of Charles C. Bean, that Patterson should sign the note as surety, and said Charles C. Bean is liable thereon."

The court refused the instruction and gave an instruction in these words: "The liability of the defendant, Charles C. Bean, depends upon the simple question of fact as to whether, or not, the signature of James Patterson was obtained to said note without the knowledge and consent of said Charles C. Bean; and if you find by a preponderance of credible testimony that the signature of Patterson was obtained without the knowledge and consent of Charles C. Bean, then said Bean is not liable; but if the evidence fails to establish said alleged fact, then said Charles C. Bean is liable for the amount due on the note."

The plaintiff insists that the instruction asked by him is not fully covered by the instruction given. He insists that he was entitled to have the attention of the jury called specifically to the fact that, if Charles C. had knowledge that Patterson was to sign the note and did not object, he must be deemed to have consented to Patterson's signing it. Possibly, we might conclude that the plaintiff's position is correct, if there was any evidence that Charles C. had knowledge that Patterson was to sign the note.

The evidence relied upon by the plaintiff, is a portion of the intestate's testimony, given upon a former trial, and which was to the effect that he told Charles C. that Patterson was to sign the note, and that Charles C. did not object. That portion of the intestate's testimony upon the former trial was read in evidence by the plaintiff, against the defendant's objection, upon the trial from the rulings in which the appeal was taken.

The defendants had, as they were entitled to do, read certain portions of the intestate's testimony as his admissions. The admissions, as claimed by the defendants, were to the effect that the intestate, when he obtained Patterson's signature, did not inform him that the principal, Bean, had declined to give a note with him as surety.

After the defendants had read as much of the intestate's testimony as they desired to read as admissions, the plaintiff insisted upon reading the rest, and the court allowed him to read a certain portion, but under the express ruling that it should be considered by the jury only so far as it had the effect to explain or modify the intestate's admissions. In the portion thus read by the plaintiff appears the statement made by the intestate upon the former trial that he told Charles C. that Patterson was to sign the note and Charles C. did not object.

Now, it is very clear that we have no evidence of what the intestate told Charles C., if anything. What was admitted only purports to be evidence of what the intestate testified to upon the former trial. As evidence of the fact sought to be established it was inadmissible. As evidence of such fact it was not admitted. The instruction asked then was based upon evidence which in no proper sense was in the case. It was, we think, properly refused.

AFFIRMED.