W. L. CULBERTSON V. SALINGER & BRIGHAM, H. C. McALISTER *et al.*, Appellants. SAME V. SAME.

**Modification of Judgment:** EFFECT ON PENDING APPEAL. A judgment was entered against a defendant and his guardian, and both defendants appealed. Pending appeal, plaintiff obtained a modification of the judgment by the rendition of a second judgment, which defendants also appealed from. The modifying judgment obtained by plaintiff made no changes except two which were in favor of defendants and which eliminated two things complained of in defendant's appeal from the judgment first rendered. Appellants brought up the evidence on the first appeal and nothing but the record made on the modifying judgment, on the second appeal. *Held*, while appellee was entitled to have the first judgment corrected after same was appealed from, defendants' appeal still stood, and the evidence was properly brought up on that appeal. The effect of the correction obtained by appellee was to require appellee to bring up the corrected record as part of the appeal then pending.

**Contracts:** CONSTRUCTION. The recital in the last clause of an instrument, "This agreement shall not become operative till the said M. shall sign certain notes, heretofore agreed upon, as surety for S.," does not mean that an independent agreement existed, binding M. to sign the notes, but only that the identity of the notes referred to had been settled by agreement

**Appeal:** PLEADING BELOW: *Waiver.* The original petition having based plaintiff's claim on a written contract, and the answer having in addition to a general denial, denied that M. "Agreed to pay or assume the payment of the several notes described in the petition," and the case having proceeded on the theory that defendant's denial went to the amendment made by plain-

tiff, near the close of the trial, to the effect that the agreement was in part written and in part oral, the denial will be so treated on appeal.

*Appeal from Carroll District Court.*—HON. Z. A. CHURCH and HON. S. M. ELWOOD, Judges.

FRIDAY, MAY 18, 1900.

THESE two appeals are in the same case. They are submitted together, and may be disposed of in one opinion. The firm of Salinger & Brigham was indebted to plaintiff in a considerable amount, which was evidenced by their promissory notes. This action, so far as the issues here are concerned, was to recover of H. C. McAlister on his agreement to become surety on said notes. The original petition alleged that this agreement was in writing, but, after plaintiff's evidence was practically all in, an amendment to the petition was filed, in which it was charged that McAlister's undertaking was partly in writing and partly oral. The case was tried to a jury, Hon. Z. A. Church presiding, and on plaintiff's motion a verdict was directed in his favor. A motion for a new trial was filed by one Lucius McAlister, representing himself as the duly-appointed guardian of H. C. McAlister, in which, among other grounds, it was stated that H. C. McAlister is, and was at the time of the trial of said action, insane, and that such fact was unknown to the attorney who appeared for him in the case; that no proper defense was made for him by a guardian, as by law required. A motion for a new trial was also filed in the name of H. C. McAlister. This last motion was, on plaintiff's application, stricken from the files. The motion of the guardian was overruled, and judgment rendered in this form: "And it is hereby further ordered by the court that the plaintiff, W. L. Culbertson, have and recover from the estate of H. C. McAlister and Lucius McAlister, his guardian, the sum of $5,826.99, together with the costs of this suit, taxed at——." This judgment was entered on February 21, 1898, and on March 22d, following,

an appeal to this court was perfected by McAlister. This is the record in the first of these appeals. The second arises in this way: On January 12, 1899, plaintiff filed his petition, reciting the rendition of the judgment, and averring there was error in rendering a judgment against Lucius McAlister, guardian, he not being a party to the action, and asking that the judgment be corrected in this respect, and be made to run against H. C. McAlister. On the hearing of this matter in the district court, Elwood, J., presiding, an order was entered correcting the judgment as prayed, and also directing that the motion of H. C. McAlister "be not stricken from the files, as heretofore ordered, but be, instead, overruled." After the first judgment, but before the second proceeding was begun, H. C. McAlister died. From this order the second of the appeals before us was taken.—*Reversed.*

*Geo. W. Bowen* and *Jayne & Hoffman* for appellants.

*B. I. Salinger* and *H. W. Macomber* for appellee.

WATERMAN, J.—We have a number of motions in these cases which need not be specially noticed, for they will all be disposed of in what we have to say upon the merits of the controversy. Passing some objections to the notice upon which the second of these proceedings was founded, we will first consider the effect of the application on the appeal then pending. We do not think sections 4091 and 4092 of the Code, under which this proceeding was had, have the effect claimed for them by appellee in a case of this kind, where the party successful in the action seeks to correct an error for which he is clearly responsible. It would be a singular and an unfortunate state of affairs if an appellee could defeat an appeal taken to this court, whenever he saw fit, by merely applying for a modification of the judgment under the sections mentioned, yet that is substantially what is claimed on plaintiff's part. It is said

the final judgment is the modified one, and from this, only, an appeal will lie, for two appeals cannot be taken from the same judgment. The effect of this is that there is no final judgment until after the expiration of one year from the date of the original judgment, for during that period an application to modify may be made, and the right of appeal exists for only six months. Truly, an appellant is placed in a dilemma if such a rule be adopted. Doubtless appellee was entitled to have the judgment entry corrected after the appeal was taken, but the effect was not to merge the first judgment in the later one. Defendants' appeal still stood, and the evidence taken on the merits of the case was properly brought here on that appeal. The effect of the correction at appellee's instance was to impose upon him the burden of bringing into this court, as a part of the appeal then pending, the corrected record. This holding disposes of a number of contentions made by appellee, which need not be pointed out singly. We may also say at this time that the assignments of error are sufficiently specific to present the questions we deem necessary to be considered.

II. This brings us to the question of McAlister's liability. It is claimed the obligation of McAlister was partly oral, and in part in writing. The only testimony which is claimed to relate to an oral promise is the following, given by the witness Salinger (we set out question and answer, so that the effect of the evidence may fully appear): "Q. You may state to the jury why those notes were not signed by Dr. McAlister. A. By the time the Culbertson letter and these blank notes got down to Manning, Dr. McAlister had already been there some little time. He was pretty nervous and uneasy, and wanted to get home, when these blank notes came down from Culbertson. We ourselves did not feel like signing them ourselves, or having Dr. McAlister do it, until we went up to Carroll and checked it up, and could see whether there was that much coming due. It was finally agreed to make the contract anyhow, because whatever there

was due on notes, we could find it out and the blank notes were dated December 1st,—nearly fourteen days yet. Made out the contract of November 16th, and Dr. McAlister took his duplicate with him, and then we looked it up in Carroll to see whether that was the right amount. We were to send them down there; then he would sign them and re-. turn them to us. · He did not want to wait until it was looked up. He took away his end of it, in other words, before these notes that Culbertson sent down were signed. The three parties made this contract about two days after we got this letter to the best of my recollection; some little negotiations afterwards, anyhow." It is apparent that this is a very indefinite testimony upon which to base a finding of an agreement distinct from the writing. No such thing was inquired for, nor does it appear from this answer, even standing alone, that the witness was speaking of anything else than the negotiations which led up to the writing; and it is admitted the writing did not obligate McAlister absolutely to sign the notes. But, to strengthen this view, we set out the next question asked of this witness, who, by the way, was under direct examination: "Now, I will ask you if Dr. McAlister ever carried out this agreement that is contained in this paper." It is clear from this that plaintiff's counsel in the court below understood the answer we have quoted as referring only to negotiations leading up to the making of the writing. It is needless to do more than say that these are merged in that instrument. We find no evidence of any oral agreement on McAlister's part. We turn now to the writing which was first claimed upon. It is in these words: "Manning, Iowa, November 16, 1891. On this day Benj. I. Salinger and L. P. Brigham have made their three notes for $2,400.00 each, drawing 8% interest, due November 16th, 1895, 6, and 7, respectively; no interest payable until January 1, 1892; annually thereafter to H. C. McAlister. These notes are given in full of account between said parties to date; in full of settlement of all former notes given, and

all matters growing out of the loaning and handling of McAlister's money by said other parties. As collateral to said three notes, Benj. I. Salinger has turned over to said McAllister the following policies of insurance on the life of the said Salinger, on which he agrees to keep up the premiums: #298,874, New York Life Insurance Company; #444,300, Equitable Life Assurance Association of the U. S.; #15,285, Connecticut General Life Ins. Co. Said Salinger has this day sold to said McAlister his law library, by bill of sale in writing of even date herewith. Said library is to remain in the possession of said Salinger, and may be removed from the state by him. When said three notes are paid, the title to said library and to said life insurance policies shall revert to said Salinger. All collaterals heretofore deposited with said McAlister, or held for him by said Salinger & Brigham, are now the property of said last-named parties; and this includes all choses in action and suits pending now standing in the name of, or enforceable, by said McAlister. All the personal property now standing on the farm adjoining the town of Harris, in Osceola county, Iowa, is now the property of said Salinger & Brigham, except that, out of the proceeds of the sale of the same, McAlister is to be paid $1,000.00, to be applied as a payment on said three notes. As further collateral, McAlister shall receive what are known as the 'Ryckman Notes,' now on deposit with W. L. Culbertson at Carroll, Iowa. This agreement shall not become operative until the said McAlister shall sign certain notes, heretofore agreed upon, as surety for said Salinger & Brigham, and the same when so signed, accepted by the said Culbertson in full of settlement of all matters between Culbertson and Salinger & Brigham. Benj. I. Salinger. L. P. Brigham. H. C. McAlister." As we have said, plaintiff now concedes no obligation is imposed on McAlister by this writing, and this is manifest from its terms. It is purely optional with McAllister whether he would sign the notes, and this he

never did. It was a settlement of matters between the parties on certain terms, if McAlister chose to accept the same, and he declined finally to do this. But it is claimed on plaintiff's part that the last clause of this instrument recites an oral agreement to sign the notes. The language referred to is this: "This agreement shall not become operative until the said McAllister shall sign certain notes, heretofore agreed upon, as surety for Salinger & Brigham," etc. This does not mean that an independent agreement existed, binding McAllister to sign the notes, but only that the identity of the notes to which this writing referred had been settled by agreement. The language used here was clearly so employed only to avoid setting out a description of the notes. We have examined this record carefully, and fail to find any evidence warranting a judgment against McAlister.

Some question is made by plaintiff as to the sufficiency of the answer to put in issue defendant's want of liability on the oral contract pleaded. The original petition, as before remarked, based the claim of plaintiff on the written contract. The answer, among other things, denied that McAlister "agreed to pay, or assumed the payment of, the several notes described in the petition, or either or any part of them." There is also a general denial. At about the end of plaintiff's case he amended his petition by alleging that the agreement to sign the notes was in part written and in part oral. This was apparently done to have the pleadings correspond, as was supposed, with the proof. No further pleading was filed by defendant McAlister, nor was any question raised in the trial court because of his failure to do so. The case proceeded on the theory that his denial went to the amendment, and we shall so treat it here. *Hoyt v. Hoyt,* 68 Iowa, 703; *Alleman v. Stepp,* 52 Iowa, 626; *Warren v. Chandler,* 98 Iowa, 237. On both appeals, REVERSED.