W. L. CULBERTSON, Appellant, v. SALINGER and BRIGHAM, H. C. McALLISTER, L. G. BURNETT, Admr., with will annexed of H. C. McALLISTER, LUCIUS McALLISTER, Admr., of the estate of MARTHA McALLISTER, deceased, Appellees.

**Evidence:** TRANSACTIONS WITH ONE SINCE DECEASED: COMPETENCY 1 OF WITNESS. In an action against an administrator and another defendant, in which a stipulation for judgment against the other defendant is filed, such defendant becomes a competent witness as to transactions with decedent, provided the stipulation for judgment is called to the attention of the court prior to the offer and objection to his evidence; but where such defendant still remained in the case by virtue of a cross petition against his co-defendant, the administrator, in which he asserted a cause of action affecting the subject matter of the main suit, he was thereby rendered an incompetent witness under Code, section 4604.

Evidence reviewed and held to show the incompetency of the witness by reason of the allegations of the cross petition.

**Same:** Where a witness is incompetent as to transactions with 2 one since deceased for the reason that a cause of action relating to the same subject matter also exists against the witness, the fact that such action was apparently barred would not render him competent, since it might be based on fraud or mistake discovered within the statutory period, or he might refuse to take advantage of the statute of limitations.

**Subrogation.** A surety who has been compensated for assuming 3 the debt of another will not be subrogated to the rights of the creditor.

*Appeal from Carroll District Court.*— HON. J. R. WHITAKER, Judge.

THURSDAY, JULY 12, 1906.

ACTION upon four promissory notes executed by Salinger & Brigham to plaintiff, which it is claimed H. C. McAllister agreed to pay or to become surety upon. Salinger &

Brigham made no defense; but McAllister while alive, and his representative after his death, among other things denied any promise on his part to pay the notes or to become surety thereon.   Salinger appeared and filed a cross-petition in equity against his codefendant, McAllister, alleging that as a part of the transaction growing out of the agreement sued upon in this action, he (Salinger) executed to McAllister notes aggregating $4,000, securing the same with life insurance policies deposited with McAllister; that the $4,000 in notes was without consideration, and given for the debt of one Brigham.   He averred that pending this action, H. C. McAllister died testate, and that he devised the said notes to his wife, Martha, who also has since died; Lucius McAllister being appointed administrator of her estate.   Lucius McAllister, as administrator, was made a party defendant to the cross-petition, and plaintiff in the cross-petition asked that his notes be surrendered and canceled and that the policies of insurance be ordered surrendered to him. Lucius McAllister, administrator, appeared to the cross-petition pursuant to order of court, and pleaded that the matter involved in the cross-petition had nothing to do with the main issues in the case, and that the court had no jurisdiction thereof.   It was also averred that all defendants to the cross-petition were residents of Muscatine county, Iowa, and that an action was there pending upon the notes given by Salinger to McAllister.   They further averred that the administrator of H. C. McAllister's estate never had anything to do with the notes given by Salinger, and they asked that the cross-petition be dismissed.   Upon these issues the case was tried to a jury, resulting in a directed verdict for defendants upon the issues in the main case.   Plaintiff appeals.— *Affirmed.*

*H. W. Macomber* and *Salinger & Korte,* for appellant.

*Jayne & Hoffman* and *George W. Bowen,* for appellees.

DEEMER, J.— Twice before has this case been in this court. See 111 Iowa, 447, and 122 Iowa, 12. These opinions disclose in a general way the nature of the controversy and something of the respective claims of the parties. On this appeal but one question, with its related issues, need be considered, and that was mooted on the former appeals. For its settlement it is necessary to refer at some length to the pleadings, and to the record now before us. January 12, 1905, plaintiff and defendant Salinger entered into a stipulation whereby plaintiff was to take judgment against Salinger individually and as surviving member of the firm of Salinger & Brigham and against Salinger & Brigham, for the amount of plaintiff's claim against them. This was dated January 12, 1905, but was not filed until January 18th of that year. The trial on the issues between plaintiff and the representative of H. C. McAllister was commenced on January 16th and concluded on January 18th of the same year. Trial on the issues raised by defendant Salinger's cross-petition was continued. No judgment has yet been entered upon the stipulation to which we have referred. In the original petition, which was filed March 20, 1896, plaintiff alleged that defendant McAllister had agreed to pay and had assumed to pay the four notes sued upon, the consideration being the receipt of the title to four hundred and eighty acres of land in Osceola county, Iowa. In an amendment filed April 17, 1896, the allegation is " that the agreement by McAllister was an undertaking to become surety for Salinger & Brigham on two certain notes to be executed to Culbertson in lieu of others made by Salinger & Brigham to plaintiff. Said agreement was in writing, and a copy thereof is attached hereto as a part thereof and marked ' Exhibit A,' and said writing truly states the consideration received by McAllister for his undertaking. The defendant McAllister received title to the east half of section 34, and the south-west one-fourth of section 35, township 100 north, range 39 west 5th P. M., Osceola county, Iowa, by

warranty deed.made to him by L. P. Brigham, and plaintiff avers that said defendant has said deed in his own possession, and that plaintiff does not know upon what agreement if any said land was so conveyed." Exhibit A, therein referred to, is the written agreement.referred to, in the opinions when the case was before us on former appeals, and which was there held to create no obligation upon the part of McAllister. In an amendment filed November 27, 1897, plaintiff averred " that defendant McAllister agreed with defendants Salinger & Brigham to sign certain notes with them, to be made payable to plaintiff, to sign said notes as surety, and to ultimately assume and pay off the debts evidenced by said notes, which were to be given to plaintiff in place of any and all notes then held by him against Salinger & Brigham; that said agreement was partly in writing and partly oral, the written portion. of it being attached by copy to an amendment to the petition filed herein on April, 8, 1896, and attached to said amendment as Exhibit A. Wherefore plaintiff prays that he have judgment against defendant H. C. McAllister on account of breach by him of said agreement, in such sum as shall be adjudged due him upon the notes herein sued upon copies of which are attached to his original petition." After the case had twice been in this court plaintiff, on January 17, 1905, during the course of the trial, filed another amendment to his petition, in which he struck out the allegation of his original petition with reference to McAllister's promise, and from the first amendment the allegation that the agreement of McAllister to become surety, etc., was in writing, and struck out all reference to Exhibit A; and from the amendment filed November 27, 1897, he struck out the allegation that McAllister was ultimately to assume and pay off the debt evidenced by the notes, and also the words " partly in writing and partly " and the reference to the agreement called " Exhibit A."

In this last amendment plaintiff alleged

That defendant Salinger & Brigham orally agreed with plaintiff, to execute to him promissory notes to be signed by them as principal and surety, to be delivered to plaintiff in lieu of any notes which plaintiff then held signed by Salinger & Brigham, and made by Salinger & Brigham to him, the plaintiff orally agreeing upon the delivery of such notes signed by Salinger & Brigham as principals and H. C. McAllister as surety to deliver to Salinger & Brigham any notes signed by them and owned by plaintiff at the time said agreement was made; that defendant H. C. McAllister orally agreed with Salinger & Brigham for a valuable consideration to sign such notes as surety, and that plaintiff accepted the said agreement of Salinger & Brigham, and that of H. C. McAllister; that defendants Salinger & Brigham were at all times ready and willing to perform their said agreement, that defendant H. C. McAllister wholly failed and refused to perform his said agreement that, therefore, defendants Salinger & Brigham were unable to and never did, perform their said agreement; that at the time the said agreements were made, and ever since, plaintiff was and has been, the owner of the notes sued upon in this action, and set out by copy in the original petition herein; that the said notes remain wholly unpaid, that payment thereof cannot be made from or out of the property of the makers thereof; that by reason of the premises and the breach of said agreement on the part of Salinger & Brigham and said H. C. McAllister, plaintiff has been damaged in a sum equal to the notes herein sued on, and the interest therein provided.   (3) Further pleading plaintiff states that there never was but one oral agreement made between him and defendants Salinger & Brigham, or between defendant H. C. McAllister and defendants Salinger & Brigham with reference to and concerning the making of notes to plaintiff by Salinger & Brigham as principals and H. C. McAllister as surety; that said agreement was between Salinger & Brigham and H. C. McAllister, was oral, was made for the benefit of plaintiff, was accepted by him, was never canceled by him or with his knowledge, authority, or consent; that defendant H. C. McAllister never made any agreement with plaintiff personally, nor in the presence of plaintiff, and that he accepted the agreement made between defendant Salinger & Brigham and H. C. McAllister for the benefit of plaintiff after the same

had been made.    That plaintiff never accepted any notes signed by Salinger & Brigham as principal and H. C. Mc-Allister as surety for any purpose for the reason that the said H. C. McAllister wholly neglected, failed, and refused to sign any such notes as surety, and no notes so signed ever came into existence to be accepted.    (4) Plaintiff further avers that the statements in his amendment to petition filed herein on April 8, 1896, that plaintiff further states that the agreement by McAllister was a written undertaking that said agreement was in writing, and that a copy of said writing is attached as part of the amendment filed on April 8, 1896, and that said writing states the consideration received by McAllister for his said undertaking, were placed in said amendment by and through mistake of law, and a misconstruction of the legal effect of said writing.    That same was stated in said amendment because it was erroneously believed by plaintiff and his counsel that said writing stated the agreement referred to in said agreement; that as soon as said mistake was realized, plaintiff amended setting out that the contract in question was oral; that in truth and in fact the contract to sign as surety was oral, and there never was but one, and that said claim concerning a writing was not made or intended to sue upon one but one contract to sign as surety; that at the time when said amendment was filed, plaintiff did not personally know whether the contract to sign as surety was oral or written; that said amendment was filed without his knowledge and without his express direction and consent; that his attorney filed the same on his own motion, knowing that but one contract to sign as surety had ever been made, but in the mistaken belief that the said Exhibit A evidenced such contract.    Wherefore plaintiff prays as is prayed in his amendment to petition filed herein November 27, 1897, and in addition that he have judgment against B. I. Salinger and B. I. Salinger as surviving partner of Salinger & Brigham, defendant H. C. McAllister and defendants substituted for him, in their substituted capacity, for damages for the breach of said agreement in a sum equal to the said notes sued upon, with interest therein provided and costs of this suit.

Defendants Burnett and Lucius McAllister denied the alleged oral agreement, pleaded the statute of frauds, the

statute of limitations, want and failure of consideration, lack of privity between plaintiff and McAllister, and failure of plaintiff and defendant Salinger & Brigham to perform the conditions and requirements of the agreement on their part. It was upon these issues that the case was finally tried, resulting in the directed verdict stated. B. I. Salinger was produced as a witness, but he was not permitted to give in testimony an account of any personal transactions or communications between himself and the deceased, McAllister. At the conclusion of the testimony for the plaintiff the trial court directed a verdict for the defendants on the grounds (1) that the alleged contract was not sufficiently established; (2) that the cause of action was barred by the statute of limitations; and (3) that the agreement was within the statute of frauds. Many questions are presented by the appeal; but one of which will now be considered.

We shall assume for the purposes of the case, that the alleged agreement is not within the statute of frauds, that plaintiff may rely thereon, although it was not made with 

1. EVIDENCE: transactions with one since deceased: competency of witness. him, and that the action is not barred by the statute of limitations, although there is doubt about each and all of these propositions. Still without the testimony of Salinger it is conceded that plaintiff has no case. Was his testimony as to personal transactions and communications with H. C. McAllister, now deceased, competent and admissible, in view of the provisions of section 4604 of the Code? By the express language of that section he was not competent if a party to the suit, interested in the event thereof, or if the person, from, through, or under whom plaintiff derived title or interest by assignment or otherwise. It will be noticed that the statute excludes all parties, whether interested or not. *Williams v. Barrett,* 52 Iowa, 637; *Burton v. Baldwin,* 61 Iowa, 283; *McCorkendale v. McCorkendale,* 111 Iowa, 314; *Hicks v. Williams,* 112 Iowa, 691; *Clinton Bank v. Grohe,* 115 Iowa,

292, *Stolenburg v. Dierks,* 117 Iowa, 25.    Salinger was
a party defendant, but before the case was determined and
on January 18th plaintiff presented to the court the stipu-
lation for judgment to which we have referred. · But this·
was not done, nor does it appear to have been called to the
attention of the court, until after it had ruled upon the ob-
jection to the testimony based upon section 4604; and the
testimony was not again offered after this stipulation was
filed, or called to the attention of the trial court.    This stip-
ulation, if filed in time, would have been sufficient to remove
the bar of the statute, in so far as witness was a defendant to
plaintiff's action.    *Conger v. Bean,* 58 Iowa, 321.

But he was still in the case as a cross-petitioner against
his codefendant McAllister, under an allegation of his cross-
petition as follows:  " That certain business transactions
were had between him and the defendant McAllister, in
the course of which McAllister executed a writing deal-
ing with a debt from Salinger & Brigham to W. L. Cul-
bertson, upon which Culbertson has declared in this action.
That, as the final outcome of these negotiations and of
the transactions in which they dealt, this cross-petitioner
executed to said McAllister his promissory notes aggregating
about $4,000, securing the same with a life insurance policy
deposited with said McAllister."

Only where a defendant has a cause of action affecting
the subject-matter of the main suit may he file a cross-pe-
tition against a codefendant or a third person.    Code sec-
tion. 3574.    Wholly distinct and independent transactions
cannot be brought into an action by cross-petition.    *Ma-
haska Bank v. Christ,* 82 Iowa, 56.    True, defendants to the
cross-petition were denying that the matters set up in the
cross-petition had any connection with the main suit; but
the witness at the time he testified or at the time his testi-
mony was offered, was, by his pleadings, insisting that they
did, and plaintiff was not objecting to the situation.    Up-

on the face of the records the witness was still a party to the proceedings.   This he remained until he dismissed his cross-petition, was defeated in his action, or his cross-petition was in some manner disposed of.   *Hogan v. Sullivan,* 114 Iowa, 456, is not in point.   There no relief was sought against the defendant who gave the testimony, and the relief asked by the interveners was not against the plaintiff as administrator.   As said in that case:  " The interventions were wholly distinct from the action in which plaintiff sought on behalf of the estate to recover money from defendant." Here the relief sought in the main action is against the representative of the deceased McAllister; and the witness was also making claims against him, which he said were the result of the transactions and negotiations dealing with the debt from Salinger & Brigham to W. L. Culbertson, upon which Culbertson had sued in this action.   The witness on the face of the records was manifestly still a party to the suit.

It was shown by testimony other than that proposed to be given by Salinger, that Salinger & Brigham executed the notes sued upon to plaintiff in the years 1887 and 1889. On November 16, 1891, the written memorandum referred to in the former opinions and which was the Exhibit A attached to the pleadings was entered into between Salinger & Brigham and McAllister.   This agreement or memorandum recited that Salinger & Brigham had on that day executed three notes of $2,400 each to McAllister, in full settlement of all former notes, and of all matters growing out of the loaning and handling of McAllister's money by said parties.   It also recited that Salinger had turned over to McAllister three policies of insurance, upon which he (Salinger) agreed to keep the premiums paid; and that he (Salinger) had also made a bill of sale of his law library to McAllister " title to the library and to the insurance policies to revert to Salinger when the first-mentioned notes are paid."   All collaterals held by McAllister, or by Sa-

linger & Brigham for him, were declared to be the property of Salinger & Brigham; and certain personal property was also to belong to them. According to the agreement, McAllister was also to receive what were known as the Ryck-man notes then held by plaintiff. The agreement closed as follows: " This agreement does not become operative until the said McAllister shall sign certain notes heretofore agreed upon, as surety for said Salinger & Brigham, and the same when so signed, accepted by the said Culbertson in full settlement of all matters between Culbertson and Salinger & Brigham."

It seems that Brigham was desirous of settling the indebtedness of Salinger & Brigham to plaintiff, and of securing the return of certain collaterals held by plaintiff, which belonged to Salinger & Brigham. And he proposed to Culbertson that he take a note signed by Salinger & Brigham individually and by H. C. McAllister. Culbertson acceded to this and sent Salinger & Brigham notes to be signed pursuant to the proposition made him. He afterwards went to their office, and was shown the memorandum from which we have quoted, and was then told that McAllister would join with them in a note as surety for the money due him. No one claims that McAllister was present at this conversation. Thereupon Culbertson surrendered the collaterals left with him by Salinger & Brigham, except what was known as the Ryckman note, which as we have seen was to go to McAllister, and which Culbertson in a letter to Brigham refused to surrender. In that letter he insisted upon this last-named note being collected for his exclusive benefit. The notes sent Salinger & Brigham were never signed, but Culbertson surrendered to them something like $2,000 in collateral upon the strength of the statement that McAllister would sign the new notes as surety. As this was not done the original notes were renewed or extended from time to time and nothing has ever been paid upon them

save the proceeds of the Ryckman notes, and this does not appear to have been indorsed upon the notes.

On the face of the written memorandum to which we have been referring is the following:  " This agreement canceled by mutual consent, Jan. 4th, 1892, H. C. McAllister." After the death of Brigham and over date of April 25, 1892, Salinger assigned to Culbertson two of the life insurance policies which are referred to in the written memorandum with McAllister, as collateral to some of the extensions of the original notes upon which this action is bottomed. Plaintiff said that he thought the premiums on these policies had been paid. The amount received by plaintiff on the Ryckman notes was $1,271.68. Culbertson relied upon the written agreement or memorandum which was shown him and upon the representations made by Salinger & Brigham or Salinger that McAllister would sign their notes when he surrendered the collateral to them, and would not have turned it over but for his belief that such a promise had been made. He does not claim that he ever saw McAllister, or that he ever had any agreement with him personally. McAllister never signed the notes, and so far as he could repudiated or canceled the alleged written agreement or memorandum January 4, 1892. So far as shown McAllister never received the insurance policies, nor the bill of sale of the law library, and he concededly never received the Ryckman note, nor did Culbertson ever agree to give it to him.  Thus stood the testimony when Salinger was offered as a witness in the case. It was proposed to show by him that a controversy arose between him, Brigham and McAllister as to whether Salinger & Brigham, or Brigham alone was indebted to McAllister, and as to the amount of that indebtedness, and it was finally proposed to McAllister that if he would sign certain notes payable to plaintiff as surety, and thus enable Salinger & Brigham to take up certain notes held by Culbertson as collateral, Salinger would turn over his law library and certain policies of

life insurance, two of them being the ones plaintiff now claims to hold as collateral, as collateral to McAllister. The law library was to be removable from the state, and the collaterals held by plaintiff were to be surrendered to Salinger & Brigham.

We now quote verbatim from the record as to what plaintiff further proposed to prove by the witness:

Salinger also told him that he (Salinger) contemplated removing from the state and should be permitted to take said law library with him. He was told (that is, McAllister) that the debt claimed from Salinger & Brigham could probably never be paid unless such removal took place, that arrangements existed so that the removal would improve the means of paying said claimed debt. He was also told that unless Culbertson were given the new notes with him as surety, the collateral which Culbertson had for existing notes would be of no use, either to McAllister or Salinger & Brigham and if no new notes were signed by McAllister, the proposed removal could not take place because Culbertson would seize said law library as soon as it was attempted to remove it from the state. At this time said Salinger was a resident of Iowa, married, the head of a family, and engaged in the practice of law, and said library and policies were exempt. These negotiations continued in Manning several days, and then arrived there a certain letter, and the certain two notes without signature which have been introduced in evidence as Exhibits A, B, C, and D. They were shown McAllister, and Salinger asked him, in the presence of Brigham, whether or not he would agree to sign Exhibits A and B, said notes, if there were turned over to him said exempt property, and if thereby said removal could be facilitated, and said collateral obtained from Culbertson. McAllister said then and there to Salinger, that he would sign said exhibits as surety; and thereupon there was delivered to him the said law library and the policies. After this was done the parties named proceeded to negotiate the settlement of the matters between themselves, the controverted matters before referred to. And as a result the parties finally entered into the writing which has been introduced in evidence [referring to the memorandum to which we have heretofore referred]. Before said

writing was completed and signed Salinger said to McAllister
that he had better defer signing Exhibits A and B, because
it was not known at this time whether the amounts stated
therein correctly represented the debt Culbertson held against
Salinger & Brigham; that Salinger or Brigham should in-
vestigate this, and have said exhibits corrected to the amount
found due, if correction proved necessary, and that then Mc-
Allister should sign as surety.    McAllister assented to this
and said he would sign the said notes as soon as advised
whether they truly represented the debt from Salinger &
Brigham to Culbertson.    That debt was investigated, was
found to be the amount shown in said exhibits, McAllister
was so advised and asked to sign said notes, and it was stated
to him that Salinger & Brigham were ready to sign them as
principals, and wished him to sign them as surety.    He re-
fused to sign the same or any notes as surety.    Before he left
Manning he took with him said policies and the bill of sale
to the library.    Before the writing which has been referred
to was completed and signed, Salinger told him that since
the signing of the notes was to be deferred until the claim
of Culbertson could be verified, and since he was taking with
him said bill of sale and policies as consideration for the
written agreement made with him and said oral agreement
to become surety, that something ought to be said in the
writing about the oral contract to sign as surety.    That it
would not be good business to have him take away these
things while he still had not carried out his oral agreement
to sign as surety.    After said conversation there was inserted
into said writing the last clause of it, which refers to notes
heretofore agreed upon.    Culbertson was not present and
came to Manning after McAllister had gone.    Salinger then
informed Culbertson that McAllister had orally agreed with
Salinger and with Brigham, that in consideration of being
given the property, McAllister would sign the notes which
Culbertson had sent down for signature; that McAllister had
taken the property with him, and a writing had been made
which acknowledged the making of an oral contract to sign
said notes, Exhibits A and B, as surety.    Culbertson said
that such arrangement and undertaking was satisfactory to
him and he thereupon turned over to Salinger & Brigham cer-
tain collaterals described by Culbertson in his testimony in
this case.    Thereafter McAllister advised Salinger & Brig-

ham by letter, that he would not sign said notes as surety, because he felt he was too old to incur such liability and because his wife and children objected to his so signing.    On March 6, 1896, he wrote Salinger as follows:    " I wrote you this morning about that Culbertson matter.    Upon thinking over the matter the only thing to be taken into account is the power of attorney that I gave Brigham.    Send me copy of same at earliest convenience.    Tell me just the position I occupy in this matter.    You know I never had any interest in the matter.    But I will not expatiate, for you know what I do.    I want you to make no delay, for you know how it concerns me, Yours, H. C. McAllister."    On March 8, 1893, McAllister wrote Salinger:    " That power of attorney that I gave Dr. Brigham has been destroyed."    On March 10, 1896, McAllister wrote Salinger the following letter:    " I expected a reply to my letters this morning.    I have been very much disturbed since I received that notice fom Carroll.    Now I want you to answer me a simple distinct question.    Do you know of any valid claim that W. L. Culbertson of Carroll has against me or my estate ? "

This is what plaintiff proposed to prove by the witness. Objection was made to the offer because of the provisions of section 4604, and the trial court held, that the objection should be sustained in so far as the testimony related to any negotiations between the witness and H. C. McAllister, deceased, and further said: " The court declines to make any ruling upon the balance of the offer until the testimony is offered in the regular way."    No further offer was made but subsequently the stipulation for judgment was introduced and read in evidence.    Upon this record we are to determine, first, whether the witness was interested in the event of the action; and, second, does plaintiff derive his interest or title from, through or under the witness ?

It is contended for appellant, that the witness is not interested in the event of the action, for that, even if the liability of the estate of McAllister be established, that liability is simply as surety, who has his remedy over against his principal, the witness, and would be entitled to be subro-

gated to all the rights of the creditor, Culbertson. If this were all, there is no doubt, perhaps, of the soundness of the proposition. *Hicks v. Williamson,* 112 Iowa, 694. But let us see if the witness has not that interest which will prevent him from testifying. Such interest must of course be legal, certain and immediate — such as at common law would have disqualified him. As said in one case, "the test is, will the witness either gain or lose by the direct legal operation and effect of the judgment; or that the record will be legal evidence for or against him in some other action." If the witness were permitted to testify to McAllister's promise to become surety, and judgment were rendered against the estate, the record would conclusively establish the fact that the witness' representations to plaintiff and upon which he secured the release and return of about $2,000 of collaterals from plaintiff were true, and he would be under no liability to plaintiff for securing the release and return thereof because of his representations to him, Culbertson. If the judgment be for McAllister's representatives, plaintiff will, no doubt, have a right to recover the value of the collaterals obtained from him through the witness' representations. *Clinton Bank v. Underhill,* 115 Iowa, 295.

In one part of appellant's argument, his counsel say: " Salinger & Brigham were the ones who were incidental beneficiaries. Culbertson was the actual contracting party. Brigham went to him and proposed this arrangement. Culbertson affirmatively agreed that such a contract should be made. It was made and formally accepted by Culbertson, and he parted with the property on the strength of it." We need only add that the arrangement was also for the benefit of Salinger & Brigham directly, for thereby they secured the return of certain choses in action which they had heretofore deposited with 'Culbertson, and for which they are liable unless they prove that such a contract was made as they represented to Culbertson. The only possible answer to this is that Culbertson's action against witness and Brig-

ham for securing the return of the collaterals upon their representations that McAllister would sign their notes or become a surety for them is barred by the statute of limitations. To this there are several answers:

First. It is by no means certain that such action would be barred. If based upon fraud or mistake the action would not be barred until discovery by the party aggrieved. There

2. SAME.

is no evidence that Culbertson had any such notice, that were he to bring suit for fraud or mistake his action would be barred. Code, section 3448. Second. The statute of limitations does not pay a debt, nor is it to be considered unless pleaded. To support appellant's contention in this respect we shall have to assume that the statute would be pleaded were action brought by Culbertson against the witness, and that nothing had been done to toll the statute. This, of course, we should not do in determining the proposition now before us. See, as supporting these conclusions, *Jenks v. Opp,* 43 Ind. 108; *Austin v. Wilson,* 46 Iowa, 362; *Meek v. Meek,* 45 Iowa, 294; *Collins v. Bane,* 34 Iowa, 385; *Welch v. McGrath,* 59 Iowa, 519; *Robinson v. Allen,* 37 Iowa, 27; *Greely v. Willey,* 71 N. H. 240 (51 Atl. 918); *Satterlund v. Beal,* 12 N. D. 122 (95 N. W. 518); *Fowler v. Wood,* 150 N. Y. 584 (44 N. E. 1124, s. c. 28 N. Y. Supp. 976). A witness in such a situation might be averse to pleading the statute, and the validity of the cause of action and of the witness' interest is in no manner determined by application of the statute of limitations. *Barke v. Early,* 72 Iowa, 273; *McDonald v. Bice,* 113 Iowa, 44. We, of course, in considering such matters are not concerned with the truth or falsity of the proposed testimony. The statute does not leave it open for us to consider that matter. Our conclusion is that the witness was directly interested in the event of the suit, and that, aside from the technical objections already pointed out, he was an incompetent witness as to personal transactions with the deceased. See, as supporting this view, *Heart-*

*runft v. Daniels,* 43 Ill. 369; *Bank v. McDade,* 4 Port. (Ala.) 252; *Campbell v. Galbreath,* 5 Watts. (Pa.) 423; *Fenton v. Miller,* 94 Mich., 204 (53 N. W. 957); *Bennett v. Virginia Co.,* 1 Tex. App. 321 (21 S. W. 126); *Greely v. Willey,* 71 N. H. 240 (51 Atl. 918); *Matthews v. Hoagland,* 48 N. J. Eq. 455 (21 Atl. 1054); *Miller v. Mears,* 155 Ill. 284 (40 N. E. 577).

One other proposition in this connection may be noticed. The insurance policies, which were to have been delivered to McAllister according to the memorandum agreement, now appear to be held by plaintiff as collateral to the renewals of the notes in suit. By reason of that fact witness Salinger is interested in the event of this action. In his cross-petition against the McAllister representatives he is claiming that these policies should be returned to him and that his notes to the McAllisters be surrendered and canceled. Should plaintiff succeed in this action, while holding the insurance policies as collateral, the result would be to confirm the title to the policies either in plaintiff or in Salinger. It will be noticed that McAllister's representatives pleaded in their answers that there was an entire want and failure of consideration for the alleged agreement to become surety, and that the conditions and provisions of the contract were never complied with by Salinger & Brigham. If, then, it be found from the witness Salinger's testimony that the agreement with McAllister was made and is in force, this would amount to an adjudication that the policies were delivered to McAllister as agreed, and of this plaintiff must have had notice, for he is relying upon a promise based thereon. The result of the whole matter then would be that Salinger would be entitled to receive these policies from plaintiff, and defendant, if called upon to respond in damages for breach of McAllister's claimed agreement, could not have the benefit of these policies through subrogation or otherwise; for he had no right thereto if they were not properly deposited with plaintiff as collateral, and these

representatives could not claim that they had never been delivered to McAllister during life, for the judgment against them would be conclusive on this point.

It is not enough to say that the assignments of these policies to plaintiff were not in accord with the rules of the companies issuing them, or that there is no showing that the premiums have been paid. So far as the wit-

3. SUBROGATION.

ness is concerned he made a full and complete assignment, and the policies, which are presumptively valid, were turned over to plaintiff as collateral. These he will undoubtedly hold until he gets his money, or it is adjudged that he is not entitled to them. As to the premiums, plaintiff says that he thinks they have been paid. In some way the witness Salinger secured the return of two of the policies which he says were turned over to McAllister, and he is as we have said interested in showing that this return was proper and lawful, in order to establish the validity of what plaintiff says was an original undertaking of McAllister. As we have said, if he establishes that fact, then as between him and the representatives of McAllister's estate he has an adjudication that he is entitled to the policies. This, perhaps, would not be an adjudication as to plaintiff's right thereto; nor would it establish that defendants, if held liable, would be entitled to subrogation to the rights of plaintiff therein. While the doctrine of subrogation is a broad and equitable one, it does not apply where one has been fully reimbursed for assuming the debt of another. *Steinreide v. Tegge,* 16 Ky. Law, 687, (29 S. W. 626); *Eaton v. Hasty,* 6. Neb. 419, (29 Am. Rep. 365); *Tracy v. Pomeroy,* 120 Pa. 14, (13 Atl. 514); *Bolton v. Lambert,* 72 Iowa, 483. If the promise was not an original one upon the part of McAllister, then plaintiff is impaled upon the statute of frauds. If it was original and independent, based upon a new consideration and not to pay the debt of another then plaintiff's witness was interested in the event of the suit,

and therefore disqualified.    *Dee v. Downs,* 50 Iowa, 310, s. c.
57 Iowa, 589.

As to the other propositions involved it is sufficient to
say that we do not think plaintiff obtained his interest or
title from, through or under the witness.    *Campbell v.*
*Mayes,* 38 Iowa, 11; *Zerbe v. Reigart,* 42 Iowa, 229; *Bou-*
*ton v. Welch,* 170 N. Y. 554, (63 N. E. 539).    The mo-
tions to strike abstracts, etc., submitted with the case are
each and all overruled.    Other questions need not be dis-
cussed.

The trial court was correct in excluding the witness'
testimony, and its judgment is *affirmed.*