KATE NOTHEM, Executrix of the Estate of HUBERT NOTHEM, deceased, Appellant, v. STEPHEN LONDERGAN and IRA C. EDMONDS, Executors of the Estate of E. J. EDMONDS, deceased, and S. LONDERGAN, Appellees.

**Evidence:** COMMUNICATIONS WITH A DECEDENT: WAIVER. A witness interested in the result of the suit is not competent to testify to transactions or communications with a deceased party; but if the other party calls him as a witness he waives the objection to his competency as to those matters inquired about.

**Payment:** MISTAKE: RECOVERY: EVIDENCE. In this action to recover money claimed to have been paid by mistake and oversight, the evidence is held to require a finding that plaintiff's testator gave a check to defendants in settlement of a partnership account, which by mistake and oversight was not taken into account in the final settlement, and that plaintiff was entitled to recover the difference between what testator was owing the partnership and the amount of the check. .

*Appeal from Cherokee District Court.*—HON. F. R. GAY-NOR, Judge.

WEDNESDAY, OCTOBER 16, 1912.

ACTION to recover a sum of money paid by one Nothem during his lifetime to E. J. Edmonds, now deceased, and to defendant Londergan. It is claimed that said payment was made through mistake, or that the payment was not taken into account in a settlement of partnership affairs of H. Nothem & Co., of which firm all parties were members. Defendants denied that there was any mistake or overpayment, and claimed that they received less than they were entitled to on the partnership settlement. On these issues the case was tried to the court resulting in a decree dismissing plaintiff's petition. The executrix of Nothem's estate appeals.—*Reversed* and *remanded.*

*Kass Bros.* and *T. M. Zink,* for appellant.

*Herrick & Herrick* and *Molyneux & Maher,* for appellees.

DEEMER, J.—The firm of H. Nothem & Co., composed of Nothem, E. J. Edmonds and S. Londergan, was engaged in the lumber, coal, grain, and live stock business at the towns of Remsen and Oyens, in this state. It was dissolved in September of the year 1904, Nothem becoming the sole owner of the business, he purchasing the interest

of each of his copartners.  Prior to the making of the contract of purchase and of dissolution, an invoice under date of August 1 was made of the stock and business of the partnership, and this invoice was made a part of the contract.  This contract, so far as material, reads as follows:

This agreement, made and entered into, in duplicate this 28th day of September, 1904, by and between E. J. Edmonds and S. Londergan of Marcus, Iowa, parties of the first part, and H. Nothem of Remsen, Iowa, party of the second part, witnesseth:  That for and in consideration of the stipulations herein contained the partnership heretofore existing among the parties of this agreement under the firm name of H. Nothem & Company, doing business at Remsen and Oyens, Iowa, is by mutual consent dissolved; and in consideration of the payment to be made as hereinafter set forth, and in consideration of the dissolution of said partnership, the parties of the first part hereby sell and agree to convey and transfer to second party by proper instruments of conveyance, the following described property, to wit:  [Here follows a description of property.]  Excepting, however, the stocks of merchandise and evidences of indebtedness due the firm, for the total sum of two-thirds of seven thousand five hundred eighty-seven (7,587) dollars.  (2) And the said first parties also sell and agree to transfer to second party, the undivided two-thirds of the entire stocks of merchandise, consisting of lumber, lime, stone, building material of all kinds, hardware, coal, grain, live stock, and other merchandise belonging to said firm of H. Nothem & Company, situated in the towns of Remsen and Oyens, Iowa, according as set forth, and for and at the prices specified in the certain inventory and invoice taken of said stocks commencing and dated August 1, 1904, subscribed by the parties, attached hereto and made a part of this agreement, in duplicate; provided, that the extensions of the amounts and footing of the items set forth in said inventory and invoice, if incorrect, are subject to correction.  And the second party agrees to pay the first parties at Remsen, Iowa, two-thirds of the total amount of said inventory and invoice above specified.  The said purchase price of the property hereby sold shall be paid by second party as follows:  The

sum of three thousand ($3,000.00) dollars on the execution and delivery of this agreement, and the remainder on or before the first day of October, 1904, less however, two-thirds of the indebtedness of the firm of H. Nothem & Company existing on August 1, 1904, the date of the inventory and invoice above mentioned, and which have been paid since that date. All accounts, books of account, and evidences of indebtedness due the firm of H. Nothem & Company existing on August 1, 1904, the date of said inventory, and not since collected, shall be scheduled in triplicate, one copy of which shall be delivered to parties of the first part, one copy to second party, and one copy together with said accounts, books of account and evidences of indebtedness due said firm shall be delivered to the German Savings Bank of Remsen, Iowa, for collection; said bank shall receipt for the same upon the copies retained by the parties hereto; said accounts and books of account shall at all reasonable times be open to the inspection of each of the parties and the same shall remain in the town of Remsen, Iowa, until paid; said bank shall collect said accounts and indebtedness due said firm and the proceeds when collected, shall be held by said bank as a separate fund and disbursed in the manner following, to wit:   First. The payment of all indebtedness existing against said firm of H. Nothem & Company on August 1, 1904, the date of said invoice, now remaining unpaid. Second. The balance on hand on the first day of each and every month shall be paid out by said bank as follows: One-third to E. J. Edmonds, one-third to S. Londergan, and one-third to H. Nothem, being the parties of this agreement.   .   .   .   A statement shall be made of all sums collected on account of the said firm of H. Nothem & Company since August 1, 1904, the date of said inventory, existing on the books of said firm on said date, and all sums considered as assets of said firm of H. Nothem & Company and shall be disbursed accordingly. The amounts found due under this contract shall be deemed due and payable October 1, 1904, at which time and upon the payment of the purchase price hereinbefore agreed upon, the said first parties shall execute and deliver to second party any and all necessary instruments of conveyance and transfer, free from incumbrance since date of their title, of

the property hereby sold, which said conveyance and transfers shall include the business, good will, and all leasehold interest of said firm of H. Nothem & Company. This agreement so far as it pertains to the dissolution of the firm of H. Nothem & Company and the distribution of the firm assets shall relate back to the first day of August, 1904, the date of said inventory and invoice, and all business transacted since that date in the name of the said firm, excepting as otherwise herein set forth, shall be regarded as the business of the second party and not of the partnership.

Some time in August of the year 1904, and after the invoice had been taken, it was discovered that Nothem had overdrawn his account with the partnership to the amount of $1,191.59, and at the request of and upon the instance of his partners, he on the 13th day of August, 1904, in the name of the firm, "By M. J. Nothem," executed a check upon the German Savings Bank for double the amount of his indebtedness to the firm, to wit, for $2,383.18, to Edmonds-Londergan Company, and this seems to have been indorsed by the payee and marked paid on August 20th by the bank upon which it was drawn. No mention was made of this check in the contract, nor was it included in the invoice of August 1st, or mentioned in the bills payable. At the time of the execution of the contract Nothem paid the other members of the firm the sum of $3,000, and on October 1, 1904, the day fixed for final settlement, he paid them the sum of $20,322.52, being the balance of the purchase price, no account being taken of the check for $2,383.18, executed after the invoice was taken. It is claimed that this was through mistake and oversight, and that defendants' attention was called to the matter, without result, on the day of settlement. According to the invoice the assets of the company on August 1st amounted to $39,872.07, and the liabilities were scheduled at $3,923.62, which, of course, did not include the check of $2,383.18. It was agreed, as will be noticed, that all books of account

and evidences of indebtedness due the firm should be turned over to the German Savings Bank for collection, and that from the proceeds thereof the bank should pay the unpaid indebtedness of the firm existing on August 1st, and that of the remainder one-third should be paid to each of the former partners on the first day of each and every month thereafter. The purchase price of the stock of merchandise was fixed by the invoice of August 1st, but it was also agreed that all business transacted by the firm after that date should be regarded as the business of Nothem individually. Plaintiff claims that the check issued to the Edmonds-Londergan Company was omitted from the final settlement by mistake and oversight, that it should have been included, and that all he was owing his copartners by reason of his overdraft was two-thirds of the amount thereof, to wit, $794.40 instead of $2,383.18, and the action is to recover the difference, to wit, $1,588.78. On the other side, it is contended that this transaction was entirely separate and independent; that the check for $2,383.18 was made to balance the accounts of the individual partners, and that it was not considered in the settlement and should not have been, and that there was no mistake or oversight either at the time of settlement or at any other time. This presents the fact issue in the case, and the appeal involves, as we understand it, nothing but this question of fact.

Since the commencement of the action both Nothem and Edmonds have died, and their representatives have been substituted, and one of the incidental questions in the case is the right of Londergan to testify against the executrix of Nothem's estate. By calling him as a witness plaintiff waived any objection to his competency as to the matters inquired about by him. *Walkley v. Clarke,* 107 Iowa, 451; *Mollison v. Rittgers,* 140 Iowa, 365. As the witness is a party, he was not competent to testify to any other

1. EVIDENCE: communications with a decedent: waiver.

transactions or communications with the deceased, Nothem. *Stolenburg v. Diercks,* 117 Iowa, 25; *Culbertson v. Salinger,* 131 Iowa, 307; *Clinton Bank v. Underhill,* 115 Iowa, 292. Defendant Londergan was not a mere agent for his copartner, Edmonds. If the two received the check and cashed it, each is responsible for the whole amount, so that he was vitally interested in the suit and disqualified under Code, section 4604, save as to matters to which he testified on direct examination, when called by plaintiff.

Londergan testified as a witness for plaintiff that the check in dispute was part payment on the contract of settlement—that is, part payment of the purchase price of 

2. PAYMENT: mistake: recovery: evidence.

the business—but, when called as a witness on his own behalf, he said that at the time the parties first talked about the dissolution, the check was given to equalize the accounts of the partners, "to square them up," and that it had nothing to do with the actual contract of sale; that it was not considered or talked about at all, for the reason he says that it equalized prior accounts and fully settled the same. But he also said that the check was given to pay the amount that Mr. Nothem owed the company, and to square up the account. It is evident that it was not listed in the invoice as a liability of the firm; and it is also admitted that it was not taken into account at the time of final settlements. That the check was paid out of the private funds of Nothem—that is, from the proceeds of the business after August 1st—is also well established. It also appears that, when the check was given, Nothem's individual account with the firm amounting to $1,191.59 was balanced by a credit to that amount. It must therefore, have been listed among the accounts owing the firm in the inventory taken August 1st, which was the basis for the contract between the parties. At that time Nothem did not owe the firm the amount of the check, nor did he owe that amount to the individual partners.

If the account had stood as it was at the time of the invoice and had been paid by Nothem, it would not have increased the assets shown by the invoice, and the account so outstanding on August 1st was evidently considered in fixing the purchase price. The check to Edmonds-Londergan Company was not treated as a liability, and all that the copartners could justly claim on Nothem's account was two-thirds of the amount thereof or $794.40. Of course, the parties might agree that each partner should draw out an equal amount from the firm, and thus equalize matters if they saw fit. And, had they done so, and omitted any reference thereto in fixing the purchase price because each was entitled to draw the same amount from the firm, plaintiff would have no just cause of complaint. But the testimony offered to establish this claim is from an incompetent witness. On the whole, we are constrained to hold that there was a mistake in giving this check and an omission to include it or take it into account on final settlement because of oversight. Such being the case, plaintiff is entitled to have the case decided on the real merits and upon the contract entered into by the parties. All that Nothem owed to his copartners at the time the check was given was $794.40, and for the difference between that amount and the check given to them, to wit, $1,588.78, he should have had judgment.

The decree will therefore be reversed, and the cause remanded for judgment for the amount last stated, with interest thereon from October 1, 1904.—*Reversed* and *remanded*.