## FOLEY *v.* HOWARD.

The single fact that a mortgage of real estate, is found upon the records of a county, raises no presumption of its delivery to, and acceptance by, the mortgagee, against the positive and unqualified denial of the mortgagee and those claiming under him, that he ever received such a mortgage, or had any knowledge thereof.

Nor is the finding of a mortgage upon the records of the county, an acceptance or knowledge of which is denied by the mortgagee and those claiming under him, presumptive evidence of a prior conveyance of the mortgaged premises, by the mortgagee to the mortgagor, or that the mortgagor had a title which the mortgagee, or those claiming under him, would be estopped from denying.

Acceptance of a mortgage by the mortgagee, is necessary to constitute a delivery; and if there is no delivery, there is no mortgage.

To constitute a delivery of a mortgage, there need not be an actual manual delivery of the instrument, by the mortgagor to the mortgagee, but there must be some act upon the part of both, which, in legal contemplation, would be equivalent to it.

### *Appeal from the Scott District Court.*

#### MONDAY, APRIL 4.

IN CHANCERY. The bill charges that on the 14th of April, 1851, complainant purchased of one Ibbotson, a certain part of out-lot 32 in the city of Davenport; and that Ibbotson then had a deed from Michael Howard for the property, and had executed to said Howard a mortgage, dated January 6, 1851, to secure the sum of eighty dollars, according to the tenor of certain promissory notes, which are fully described. It is further stated that this deed from Howard to Ibbotson has been lost; that the mortgage was delivered to Howard, accepted and filed for record by him on the 14th of April, 1851, and is now owned by him, as well as the notes therein specified ; that after the recording of this mortgage, the said Michael conveyed a portion of said real estate to William Howard ; that William took his title with notice, and subject to the mortgage from Ibbotson

to Michael; that Ibbotson made a deed to complainant at the time of his purchase, which was recorded on the same day; that by the terms of his purchase, he was to pay off said mortgage debt, the remaining part of the purchase money ($100), being paid at the time; that he had tendered to Michael the amount due on said mortgage, and requested him " to reconvey said property to complainant, which he refused to do ;" and that he brings the money into court. The prayer is, that an account may be taken of what is due on the mortgage; and that the defendants, (the two Howards), may be decreed to deliver up said mortgaged premises to complainant, free from all incumbrances, and also all deeds and writings in their control relating to said property.

The answers deny that Michael ever sold the property to Ibbotson ; that he ever made him a deed, or ever received from him a mortgage, as stated in the bill, or in any other manner, or at any other time, and asserts a want of all knowledge of any such instrument; and that William entered into the possession of the premises, after his purchase from Michael, in 1854, and made valuable improvements thereon, with the knowledge of complainant.

The replication denies all the new matter stated in the answer. The cause was heard upon these pleadings, and the following testimony :

*First.* The deed from Ibbotson to Foley, dated April 14, 1851, and recorded the same day. *Second.* A certified copy from the records of Scott county, of a mortgage from Ibbotson to Michael Howard, dated January 6, and recorded April 14, 1851.

This was all the testimony offered by the complainant. The respondents introduced :

*First.* A deed from Michael to William, dated March 5, 1853, and recorded November 15, 1854. *Second.* A deed from LeClaire to Michael for the premises, dated February 9, 1846, and recorded the same day. *Third.* The depositions of two witnesses, who swear, in substance, that Wil-

liam Howard made improvements upon said premises as early as 1851, and had occupied the same since that time; that complainant knew of these improvements; that in 1851, complainant removed a shanty he had upon said land to another tract; and that while this shanty was being rebuilt, he stated that he considered the old place worthless, and that by abandoning it, he could get more ground for a less price.

The bill was filed August 14th, 1856, and upon a final hearing was dismissed. Complainant appeals.

*James Grant*, for the appellant.

*Cook, Dillon & Lindley*, for the appellees.

WRIGHT, C. J.—Upon one ground, at least, we feel quite clear that this decree must be affirmed.

It will be observed that the allegations of the bill, that Michael Howard conveyed the land to Ibbotson, and that Ibbotson made a mortgage to Howard, which was accepted and recorded by him, are each distinctly and definitely denied by the answers. These answers, it is true, are not sworn to; but the execution of the deed and mortgage, and their delivery, are affirmed by complainants. These affirmations are denied, and the burthen of proof rests with the party affirming. The title is found in Michael Howard, and from him it passes to William, and there it must remain, as against complainant, unless a previous conveyance was made to Ibbotson, of which William had either actual or constructive notice. There is no proof, or pretense of proof, direct, that Ibbotson ever received a deed from Howard. The complainant's case rests alone upon the mortgage found upon the record, and what he claims are the legal, legitimate, and proper presumptions and consequences resulting therefrom.

Michael Howard, as well as William, deny, as we have seen, all knowledge of any such mortgage. It is not shown

Foley v. Howard.

that the mortgagee ever received the mortgage or the notes —that he was present at the time of its execution—that he afterwards assented to it—that it was delivered to another person for him—that he requested the mortgagee to execute it—nor, in a word, that he ever claimed or expected any advantage therefrom. We say none of these things are shown. By this, we mean, there is no direct proof of them, nor any circumstances from which they may be inferred ; unless the single fact that the mortgage was found upon the record, raises the presumption of its delivery and acceptance, and that against the positive and unqualified denial of respondents.

It seems to us that it would be a very novel and unsafe doctrine, to hold that the finding of this mortgage on the record, was presumptive evidence of a prior conveyance by the mortgagee to the mortgagor; or that the mortgagor had a title which the mortgagee, or those claiming under him, would be estopped from denying. The case stands quite different from what it would, if the acceptance of the mortgage was shown, or if it appeared that the mortgagee presented the same for record, or if it was found in his possession or under his control, as alleged in the bill. Under such circumstances, as between the parties to it, a presumption might arise of title in the mortgagor. A mortgage can be executed, however, without the presence of the mortgagee. If properly acknowledged or proved, it may be handed to the officer for recording by any person—the mortgagor, or a third person, as well as the mortgagee. If the mortgagee should subsequently assent to, and adopt the mortgage, such adoption as between the parties to it, might relate back to the time of its execution, though there was no evidence as to who presented it for record ; and even though the mortgagor, or some third person, had presented it, without the knowledge of the mortgagee. In this case, however, there is no such adoption or assent ; but, as far as the record shows, the mortgagee has uniformly disclaimed all knowledge of such an instrument, and all rights or

claim of advantage under it.   Under such circumstances, we do not believe that the record of the mortgage is *prima facie* evidence of its delivery, even if it would be in any case.   Acceptance by the mortgagee was necessary to constitute a delivery ; and if there was no delivery, there was no mortgage.   By this, we do not mean that there should have been an actual manual delivery of the instrument by the mortgagor to the mortgagee ; but there must have been that which, in legal contemplation, would be equivalent to it.   Thus, as we have seen, it might have been executed and recorded in the absence, and without the knowledge of the grantee, and yet his subsequent assent might operate to make the delivery effectual from the time of the execution.   So, if in good faith, and at the instance of the grantee, the grantor should execute the deed, and hand it to a third person, or the recording officer, for the grantee, the delivery might be complete.   And cases are not wanting to show, that there may be instances where the instrument would operate as a deed, though it was not parted with by the person executing it.   *Garnons* v. *Knight*, 5 Barn. & Cresw., 671 ; note to *Maynard* v. *Maynard*, 10 Mass., 458. In all these instances, however, it is to be observed that it is pre-supposed that the manner of delivery was shown by competent and sufficient testimony ; and that there was either an actual delivery, or the existence of those circumstances which amounted in law to the same thing.   So, there may be some things which would be *prima facie* evidence of a delivery, as, for instance, the possession and production of it by the grantee ; while, on the other hand, its being found in the hands of the grantor, raises a presumption against any delivery.   *Hatch* v. *Hoskins*, 5 Shepl., 39.   No such presumption arises, however, from the fact that it is found recorded, where the grantee has done no act recognizing its existence or validity, but where, on the contrary, he expresses his dissent and disapproval.

It is true that our law makes a duly authenticated copy of such an instrument competent evidence, whenever, by

the proper proof, the absence of the original is accounted for. Code, section 1228. This was intended, however, to give a rule for the manner of proving such instruments, in the absence of the original, and was not designed to give it any greater effect than the original itself would have. The delivery of the instrument stands as an independent fact; and, under the circumstances of this case, no light is thrown upon it by the production of the authenticated copy.

It is also true, that as a general rule, a party is presumed to assent to a grant which is plainly beneficial to him. But, in the first place, it is not perceived that the rule has any application in this case, for, as suggested by appellees, it is not easy to comprehend how this mortgage could have this beneficial effect. But, in the next place, the rule has more particular reference to that class of cases, where the grant was, at the time of its execution, beneficial, and where there has been a subsequent assent by the party benefited. Not so, where, to say the least of it, the benefit is doubtful, and where the grantee disclaims all right or benefit under the instrument.

Entertaining this view of the case, it is manifestly immaterial to inquire how far, under other circumstances, William Howard would be estopped from denying the title of complainant. The doctrine of estoppels, in our opinion, has no place in the case. Neither need we determine what would be the effect of the mortgage, even if its delivery was shown, in the absence of all proof of any deed or conveyance from Michael Howard to Ibbotson. Nor is it necessary to ascertain whether any possible presumption of the acceptance of the mortgage by the grantor, resulting from its being found upon record, is not conclusively rebutted by the other circumstances of the case. All these, and other questions, we omit to notice, as the above views, in our opinion, render such examination unnecessary.

Decree affirmed.