Craven v. Winter.

---

CRAVEN v. WINTER ET AL.

1. **Conveyance**: TESTAMENTARY WRITING: DEED. An instrument passing a present interest is a deed and not a will, although the right to possession and enjoyment does not accrue till after the death of the grantor.

2. ———: ———: EVIDENCE. The intention of the parties as revealed in the transaction and in extrinsic circumstances, and the objects in view in the execution of an instrument, may be considered in its construction.

3. ———: ———: REVOCATION. When an instrument conveys property absolutely but reserves possession and control in the grantor during his life, it is irrevocable; so also, when it conveys land for such uses as are set out in a will, neither deed nor will is revocable, if no power of revocation is reserved in the deed.

4. ———: DELIVERY: EVIDENCE. The proper acknowledgment and recording of a deed, beneficial in its character to the grantee, affords a presumption of delivery.

5. ———: ———: ———. Where the grantor delivered a deed to the wife of the grantee in his absence with the declaration that it was intended for his benefit, it is presumed to have been delivered to grantee.

| | |
|---|---|
| 38 | 471 |
| 78 | 428 |
| 38 | 471 |
| 87 | 104 |
| 38 | 471 |
| 88 | 240 |
| 38 | 471 |
| 92 | 153 |
| 38 | 471 |
| 93 | 709 |
| 94 | 531 |
| 38 | 471 |
| 96 | 186 |
| 38 | 471 |
| 116 | 335 |
| 38 | 471 |
| 130 | 434 |
| 38 | 471 |
| 135 | 13 |
| 38 | 471 |
| 139 | 165 |
| 38 | 471 |
| 143 | 296 |
| 144 | 79 |

6. ———: ———: CONSIDERATION.  A conveyance for the consideration of love and affection is good between the parties and all others except subsequent purchasers without notice, and creditors.

7. ———: USE.  A conveyance granting an estate which vests at once, but which reserves a life estate to the grantor, creates no use for the benefit of the grantor in the estate granted.

8. ———: ———: DOWER.  When the wife does not join in a conveyance, dower is determined by the law in force at the time of the execution of the deed.

*Appeal from Washington District Court.*

MONDAY, JUNE 15.

PLAINTIFF being in possession of certain lands, brought this action to establish her title thereto, and to bar and estop defendants from claiming or setting up any right or title to the property.

The answer denies the claim of plaintiff, and avers that the title of the premises is in defendants, Patterson & Rheinart.

The cause was submitted to the court without a jury, who found the following facts and conclusions of law:

"April 17, 1845.  Wm. Craven being the owner in fee by title derived from the United States, of the land in controversy in this case, to-wit: The east half southeast quarter of section 27, 76, 8, executed the following conveyance, to-wit: [The deed is in the usual form, with covenants of warranty without a valuable consideration expressed, describing the grantee as 'W. P. Craven, my son,' and describes the estate conveyed as a fee simple.  The following clause is the closing sentence of the instrument preceding the signature:  "The said William P. Craven is not to go into possession until after the death of his father and mother."  It is dated April 17, 1845, and the wife of the grantor does not join in it.]

"And the said conveyance was duly acknowledged on the date of its execution.

"At the time of the execution of the above deed the said William Craven was sick and apprehensive that he would not recover, and expressed a desire to dispose of his property in such a way that it could not be disturbed after his death.

A will was spoken of between himself and the Justice who had been called to do the writing, but the conclusion was to execute deeds, at whose suggestion does not appear, and he on the same day executed a like instrument to another son, James M., conveying one eighty and the other undivided half of the forty above described in section 32, 76, 7. Wm. P. was then about sixteen years old, and James M. was about 14, and they were living with their parents on the premises conveyed to the youngest son. The mother Jannette did not join in the above conveyances. The said William also had three other children, who were married, a son and two daughters, and on the 19th of the same month he executed a deed to the son for two forties, and one on the 30th to one of the daughters for an eighty, and ten acres of timber, and one, on the 23d day of July, of the same year, to the other daughter and her husband for one forty and ten acres of timber. These last three deeds were absolute, without any reservation as to possession, and were joined in by the mother.

"The said William P. lived with his father till after his marriage, which occurred in the spring of 1848 or 1849, being at that time married to the plaintiff in this case. There were then 35 acres of the south forty of the eighty in question in cultivation; and material had been prepared by the father for a log house, which was afterwards erected by the two on the said south forty, and said Wm. P. moved into it. And about this time the father hired the said Wm. P. to break and fence the north forty, and the remaining five acres of the south forty, and paid him therefor, and said improvements were made accordingly, being finished about 1850. And then by contract between them, Wm. P. was to pay his father a certain grain rent for the use of the place, and pay the taxes.

"The summer after the son had moved upon the place as above stated, the father there handed the deed of April 17, 1845, which had been retained by him up to that time, to the plaintiff, the said Wm. P. not being at home at the time, telling her to take it and take care of it, and at his and their mother's death, the land would be William's and her's. And she took it and put it in a chest used by her and her husband.

From here the said Wm. P. took the deed and filed it for record April 12, 1851. To this no objection appears to ever have been made by the father.

"About 1852, Wm. P. moved upon the west half of the southwest quarter of section twenty-six, township seventy-six, north of range eight, adjoining the eighty in question on the east. Here he continued to farm the latter for four or five years from the time he commenced paying the taxes, and paying his father grain rent as stipulated. Then the contract was nullified, and one dollar per acre rent was paid in lieu of the grain, for a year or so, when it was again agreed between them, being as early as 1855 that the father would give up the north forty, and Wm. P. should have it rent free, and the father should retain the south forty, and he then for several years occupied the same either himself or by tenants. From 1855 to 1864 both inclusive, the north forty was assessed to Wm. P., and the south forty for the most of these years, to his father. About 1865 it was again agreed between them that Wm. P. should also take the south forty again and pay all the taxes, and pay his father $40 annually, and the whole eighty was assessed to him from 1865 to 1871, both inclusive. The assessments above referred to as having been made to Wm. P., were up to the time of the conveyance to his wife, hereinafter shown, made to him by his direction and the taxes were paid by him.

"In 1858 Wm. P. twice mortgaged the 80 in dispute in connection with his other adjoining 80; in one of these his wife joining. These mortgages were satisfied in 1865. And May 20th, 1870, he applied for and obtained an injunction to prevent the sale of the said two eighties on execution, alleging them to be his property.

"Oct. 30, 1867, Wm. Craven, his wife Jannette joining, executed and delivered an ordinary warranty deed for the land in question to the plaintiff, a pecuniary consideration being expressed in the deed, but none in fact paid. This deed was filed for record April 12, 1868.

"Nov. 14th, 1867, the said Wm. Craven died; the said Jannette is still living.

Craven v. Winter.

" Since the execution of the deed to his wife, Wm. P. has paid no rent to any one for any portion of the land, part of the time he has farmed it, and for three years it was rented by plaintiff to their eldest son, the rent being used for the support of the family. For some of the years since the conveyance to plaintiff she has paid the taxes.

" Since said conveyance the said Wm. P. has been from home a considerable portion of the time, and in his absence his wife and sons have controlled the entire farm, the east 80, on which they reside, as well as the one in dispute. '

" February 16, 1869, a judgment was rendered in the Circuit Court of Washington county, against certain parties for over $500, and the said Wm. P. Craven became surety for the stay of the execution thereon, and in November of the same year a judgment was also obtained against him in the same court for over $300, and another in February 1870, for over $1,200, and April 7, 1870, he filed notice with the Clerk to sell subject to redemption, in case any real estate belonging to him was levied upon. February 4, 1871, an execution was issued on the first judgment, and on the 11th levied by the Sheriff on the 80 in question, and also on the eighty east of it, both as the property of Wm. P. Craven. And on the 25th of March, he sold said lands on said execution to John Winter, who owned the largest of the above judgments, the east eighty for $1,000 and the south forty of the one in question, for $786, and the north forty for $610, and executed to the said John Winter, a certificate of purchase therefor. And the proceeds were applied by the sheriff to the satisfaction of the three judgments, he having executions on the other two also in his hands on the day of sale. The said east eighty was redeemed and the certificate of purchase as to the one in question was assigned to Patterson & Rheinart, a firm composed of A. H. Patterson and J. Rheinart, the defendants herein. And at the expiration of the time of redemption, to-wit: March 26th, 1872, a Sheriff's deed was executed to said Patterson & Rheinart therefor.

" The liabilities on which these judgments were obtained, originated after the conveyance to the plaintiff.

"And upon these, the only material facts proved, the Court bases the following conclusions of law, to-wit:

"That the deed of April 17th, 1845 should not be construed as a disposition of property in the nature of a devise, revocable at the will of the maker, but as a conveyance of an interest in land to take effect on delivery.

"That the consanguinity of the parties shown by the deed, and the evidence outside, establish a good consideration therefor.

"The above facts show that the said deed was delivered to the grantee.

"That the legal effect of said deed was that Wm. P. Craven became the owner in fee of the land, subject to an estate remaining in the grantor for his life and the life of his wife, Jannette Craven.

"That the deed of Oct. 30th, 1867, conveyed this life estate to plaintiff, and the Sheriff's deed of March 26th, 1872, conveyed the fee simple title, subject to said life estate to the defendants, Patterson & Rheinart.

"That plaintiff acquired no greater interest than the estate for the life of Jannette Graven by reason of the said Jannette not joining in the first deed. And there is no dower interest of the said Jannette transferred to plaintiff that can now be assigned.

"That Wm. P. Craven acquired no equitable interest in the land by virtue of improvements.

"That the possession of Wm. P. Craven as shown above does not give defendants a title by prescription whereby they can wrest plaintiff from the enjoyment of said life estate.

"It is therefore ordered and adjudged by the Court that there be established and confirmed to the plaintiff an estate in said land, to-wit: the east one-half of the south-east quarter of Section 27, Township 76, north of range 8 West, for and during the natural life of Jannette Craven, the mother of Wm. P. Craven, and that defendants be forever barred and estopped from deriving any right or title to said land adverse to the said estate of plaintiff.

"And it is further ordered and adjudged that the defend-

ants, A. H. Patterson and John Rheinart are absolute owners in fee of the lands, subject only to the said life estate of plaintiff and are upon the death of the said Jannette Craven, entitled to the immediate possession and full enjoyment of the same.

"And it is further ordered that the plaintiff pay one-half of the costs herein, and the defendants one-half, except defendants shall pay all the costs of taking the deposition of the witness Wm. H. Jenkins.

" To which finding of facts, conclusions of law and rendition of judgment, each of the parties at the time excepted.

E. S. SAMPSON, *Judge.*

A judgment was rendered in accordance with the findings of the court, from which plaintiff appeals to this court.

*Clark & Haddock, McJunkin & Henderson,* for appellant.

*Patterson & Rheinart,* for appellee.

BECK, J.—We find it necessary to discuss but two questions raised by the assignment of errors, and considered in the brief of plaintiff's counsel.

I.   It is first insisted by counsel that the deed of April 17, 1845, by William Craven, the father, to his son W. P. Craven, is a testamentary writing and therefore revocable, and was in fact revoked by the deed to plaintiff executed October 30, 1867. We are required to consider the character and effect of the instrument in question.

Except for the clause of the deed reserving possession of the premises during the life of the grantor, and the grantee's mother, the instrument is not different from an ordinary conveyance. This clause is the foundation of the claim that the instrument is a testamentary writing, and not a deed. It therefore demands attention. It is not important to determine, in view of the decision of the court below and the questions brought before us upon the appeal, the effect of the reservation, the character of the estate created thereby, or the parties

to whom it is reserved, further than to hold that under it the grantee could not enter into the possession of the premises during the life of his father and mother. The District Court held that, by the provision, a life estate was reserved and vested jointly in the father and mother; that, at the death of the father, the right to the possession of the whole of the land continued in the mother during her life. The correctness of this decision is not questioned by defendants, or rather they raise no objection to the mother holding possession of the land during her life. They have not appealed, and are therefore not in a position to call in question the correctness of the judgment. It may be conceded for the purposes of this case, that the mother is entitled to the possession of the land during her life.

We are now to determine whether the instrument in question is a deed, or a testamentary paper revocable at the will of the maker.

A rule recognized by this court, which seems to have the united support of the authorities, furnishes an unerring test to determine the character of the instrument. It is this: "If the instrument passess a *present interest*, although the right to its possession and enjoyment, may not occur till some future time, it is a deed or contract; but if the instrument does not *pass an interest* or right till the death of the maker, it is a will or testamentary paper." *Burlington University v. Barrett*, 22 Iowa, 72.

1. CONVEY-
ANCE: will:
deed.

Applying this rule to the instrument under consideration, we have no difficulty in coming to the conclusion, upon the very words of the paper, and of the reservation in question, that it passed a *present interest* to the grantee. Whatever interest was held by the father, was by the instrument vested in the son, charged however with the life estate reserved in the deed. Upon the face of the instrument itself there is no more ground for holding it to be a testamentary writing, than can be found in all deeds wherein may be reserved estates less than those conveyed. The fact that a life estate is reserved in a deed conveying the fee-simple title, is certainly no ground for construing the instrument to be testamentary and revocable.

But the intention of the parties may be ascertained from the entire transaction, to aid in the construction of the instrument.

And it may be ascertained by extrinsic circumstances surrounding the transaction.

The situation of the parties and the objects in view inducing the execution of the instrument may be considered in its construction.

In support of the rule just announced, see the following cases decided by this court: *Field v. Schucker*, 14 Iowa, 119; *Pilmer v. The Br. St. Bank, etc.*, 16 Iowa 321; *Rindskoff Bros. v. Barrett*, 14 Iowa, 101; *McCramey's Ex'r v. Griffin*, 13 Iowa, 313; *Karmuller v. Krotz*, 18 Iowa, 352.

Applying these rules of construction to the instrument in question, in the light of the facts before us as found by the District Court, we are of the opinion that it was the intention of the grantor to convey the fee simple title to the land in dispute to his son, reserving the possession as prescribed in the deed, during the lives of the grantor and his wife.

It has been held that an instrument conveying property absolutely, but reserving possession and control in the grantor during his life is valid and irrevocable.

*Robey v. Harmon*, 6 Gill., 464; *Jackson v. Culpepper*, 3 Kelly, 573; *Robinson v. Schley*, 6 Geo., 526; *Jaggers v. Estes*, 2 Strob. Eq., 378; *McGlown v. McGlown*, 17 Geo. 234; *Williams v. Sullivan*, 10 Richardson, 223.

A deed referring to and incorporating a will is good even if the disposition of the property is to take effect *in futuro*. *Dawson v. Dawson*, Rice's Eq., 260.

And when a deed conveys lands for such uses as are set out

2. ——:——: in a will, neither deed nor will is revocable, if
revocation. no power of revocation is reserved in the deed. *Mayor of Baltimore v. Williams*, 6 Md., 235.

The following cases support the doctrine recognized by this court as stated above: *Thompson v. Johnson*, 19 Ala., 59; *Meek v. Holten*, 22 Geo., 491; *Daniel v. Veal*, 32 Geo., 589; *Johnson v. Hines*, 31 Geo., 720.

II. It is insisted that the deed was never delivered, and is therefore inoperative.

The instrument being in the custody of the grantee, is pre-
sumed to have been delivered by the grantor, and
accepted by the grantee at the date of its execu-
tion.   *Wolverton v. Collins,* 34 Iowa, 238; *Foley v. Howard,*
8 Iowa, 56.

3. ——: deliv-
ery: evidence.

It has been held that "when a deed, beneficial in its charac-
ter to the grantee, has been properly acknowledged and
recorded, the presumption of law in favor of the grantee is,
that it has been delivered; and the burden of proof upon the
party claiming the non-delivery, to clearly rebut the pre-
sumption." *Robinson v. Gould et al.,* 26 Iowa, 89.

We are of the opinion that the facts found by the District
Court do not overcome this presumption, but rather support
it.   The grantor delivered the deed to the wife of the grantee
in his absence, with declarations to the effect that it was
intended for his benefit; and without any intimation that it
was to be retained by her for any purpose.   We are certainly
authorized to presume that the father intended the deed to be
delivered by the wife to her husband.   Considering the rela-
tion of husband and wife, it is not reasonable to suppose that
she would be chosen by the grantor to hold the instrument
had it been intended as an escrow, or if its delivery was not at
the time intended.   Other facts found by the court below,
strongly support this presumption.

III.   No question can be made as to the sufficiency of the
consideration for the conveyance, as the rights of creditors of
the grantee are not involved in the case.   A con-
veyance for the consideration of love and affection
is good between the parties and against all others except sub-
sequent purchasers without notice, and creditors.   *Mercer v.
Mercer,* 29 Iowa, 557; *Moon v. Pierson,* 6 Iowa, 279.

4. ——: con-
sideration.

IV.   The consideration being sufficient, the estate granted
to the son vested at once in him for his own use and bene-
fit.   The father, it may be admitted, retained an estate for
life, but no use resulted to him as to the estate granted to the
son.   Hence the position of plaintiff's counsel to the effect
that a use resulted to the father which drew the entire estate
in the lands, is unsound.

V. At the date of the execution of the deed, 1845, the dower of the wife was an estate for life in one-third of the lands. Conceding that the deed of 1867 passed all the interest of the wife of the grantor to plaintiff, and that her inchoate rights of dower, was conveyed thereby, which we by no means admit, the inchoate right of the wife to dower before the husband's death appears to me not to be subject to grant or assignment. See *Maguire v. Roggin*, 44 Missouri, 502. That right is determined by the law in force at the date of the first deed. *Lucas v. Sawyer*, 17 Iowa, 517; *O'Ferrall v. Simplot*, 4 Iowa, 381; *Davis v. O'Ferrall*, 4 G. Greene, 168; *Young v. Wolcott*, 1 Iowa, 174. If plaintiff holds the dower estate, it is in one-third of the lands for the life of the dowress as fixed by the law in force in 1845. But the judgment of the court awards to plaintiff the possession of all of the lands during the life of the widow of the grantor in the two deeds. She therefore gains by the judgment a greater interest in the lands than she would be entitled. to, were the law so that dower could be passed by grant or assignment before the death of the husband—a question that we need not discuss. Plaintiff cannot, therefore, complain of the judgment of the court awarding her one-third of the lands for the life of the widow of the grantor, and as defendants have not appealed from the judgment, we are relieved of the duty of making inquiry as to its correctness in this respect.

The foregoing discussion disposes of all the questions involved in the case.

The judgment of the District Court is

AFFIRMED.