IN RE ESTATE OF L. P. BRIGHAM, Deceased, R. E. CORBIN, Administrator, v. LUCIUS MCALLISTER, MRS. CELIA BRIGHAM, ANNA M. BURNETT, L. G. BURNETT, MRS. HARRY HINE and HARRY HINE.

**Estates of decedents:** SALE OF PROPERTY: DELAY OF APPLICATION. An application to sell land of an estate for the payment of debts for which the decedent was primarily 'liable, should be made within the statutory time for the settlement of the estate, unless for a sufficient reason a longer time is granted by the court. And the mere possibility that the property may enhance in value, and the pendency of an unsuccessful action to enforce an alleged agreement of another person to become surety for decedent, are not sufficient reasons for postponing a sale nearly two years.

**Deeds:** DELIVERY: PRESUMPTION. The finding of a deed among the papers of the grantee after his death raises the presumption that it was delivered on the day of its date, though recorded several years afterward.

**Same:** BURDEN OF PROOF. Possession of a deed by the grantee is *prima facie* evidence of delivery; and the burden of showing that it was not delivered is upon the party claiming otherwise, which must be by clear and satisfactory evidence. Failure to record the deed is not sufficient to overcome the presumption.

**Same.** Where the grantee of a decedent under an unrecorded deed had parted with title to the land, and upon an application for administration on the ground that the land belonged to the estate asserted no claim in himself, it will be inferred that the

grantees purpose in not producing the deed was to put the petitioner on his proof, and not that he made no claim of having acquired title from decedent; and therefore the circumstance that he did not produce the deed would not overcome the presumption of delivery.

**Insolvency:** EVIDENCE. Subsequent insolvency may be considered as tending to show insolvency at a prior date, provided the conditions have continued substantially the same; but in the absence of such proof the conditions once established, though presumed to continue, do not ordinarily relate backward.

**Same.** The insolvency of a grantor three months after making a deed reciting a consideration of several thousand dollars, is near enough in point of time to be considered on the question of whether he received any consideration; but it should be considered in connection with a later deed from the grantee to him of the same land, for which he may have been indebted.

**Conveyances:** PRESUMPTION AS TO GOOD FAITH: REBUTTAL. A conveyance is presumed to have been made in good faith and for a valuable consideration, and the fact that a grantor was insolvent three months after executing a deed reciting a consideration of several thousand dollars, as received from the grantor who had conveyed the land to him a short time before, was not sufficient to overcome this presumption.

**Fraudulent conveyances:** WHO MAY QUESTION. An administrator can not challenge the capacity of his decedent grantee to convey to others land claimed to have been fraudulently conveyed by decedent.

**Judgments:** PARTIES: WHO CONCLUDED. One not a party to a proceeding is not bound thereby. And although an adjudication as to the right to property may be binding on the heirs of a decedent, it does not affect their claim as purchasers of the property.

**Estates of decedents:** ADMINISTRATION: NOTICE. Where it is alleged that a decedent owned certain land merely as a reason for administration, and the appointment of an administrator is all that was asked, the widow may assume that the notice was to her as such, and she is not bound to anticipate that a claim will be allowed; nor is she required to set up her interest in the land until an application for its sale is made.

*Appeal from Carroll District Court.*—HON. F. M. POWERS, Judge.

Saturday, May 8, 1909.

Rehearing Denied Friday, October 1, 1909.

L. P. Brigham, a resident of Carroll County, died November 3, 1892, and in June following J. Brunnier was appointed administrator of his estate. In August, 1895, Brunnier reported to the court that no claims had been filed against him as administrator and no property had come into his hands, and he was discharged. In February, 1897, on application of W. L. Culbertson, based on alleged discovery of assets belonging to deceased, R. E. Corbin was appointed administrator of the estate, and a claim of Culbertson amounting to $4,712.81 was allowed by the administrator, as were also two other claims, one for $125.98 and the other for $128.82. Suit was begun by the administrator on September 9, 1906, more than nine years after his appointment and fourteen years after the deceased had departed this life, in which he prayed that three quarter sections of land in Osceola County be ordered sold to pay the claims against the estate. The petition alleged that Brigham died seised of said land, and that the cause of delay in asking an order of sale was the pendency of an action to recover the amount of the claim of Culbertson from H. C. McAllister and the unsalability of the land. Of the defendants, Celia Brigham is a widow of deceased and the daughter of H. C. McAllister, Helen Brigham and Mrs. Harry Hine are daughters of deceased. Lucius McAllister is a son and Anna M. Burnett is a daughter of H. C. McAllister. The defenses interposed were: (1) That the action was barred, in that the petition was filed "more than twelve months after the appointment of said administrator, and no peculiar circumstances are shown to exist which would authorize a court of equity to excuse a delay of nearly ten years by the administrator before making his application and filing his petition to sell the real estate for the payment

of said decedent's debts." (2) That said real estate was not owned by deceased at the time of his death nor prior thereto, but was the property of H. C. McAllister, and then belonged to Celia Brigham and Anna M. Burnett. (3) That the last-named persons and their grantors "have been in open, notorious, and adverse possession of said real estate for more than 10 years past." In a separate answer Mrs. Brigham averred that she was widow of deceased, and as such was entitled to one-third for all real estate of which said Brigham died seised, free from indebtedness outstanding against him, and she asked the court to protect her rights as widow in any real estate which the court might find belonged to the deceased. To this answer plaintiff replied that in the proceeding referred to, wherein Culbertson prayed that an administrator be appointed, H. C. McAllister, Mrs. Brigham, and her daughters were made parties, notified of the hearing of the application and joined issue thereon, and that on hearing the court adjudicated, that said McAllister did not own the real estate described at the time of Brigham's death, but that it then was the property of Brigham; that McAllister never owned said premises; that title thereto never passed to Lucius McAllister, under whom Mrs. Burnett and Mrs. Brigham claimed; that a pretended deed from Brigham and wife to H. C. McAllister was never delivered; that the deed from H. C. McAllister and wife to Lucius McAllister was void and of no effect, for that the grantor was incapable of executing a deed at the time the same was signed, and that the same was without consideration and made in pursuance of the plan to place the title of said land where it could not be reached by the creditors of Brigham or McAllister, and that the subsequent conveyances by Lucius McAllister to Mrs. Burnett and Mrs. Brigham were in pursuance of a similar design; that Lucius McAllister was concluded by the adjudication referred to for that (1) he acquired only the interest H. C. McAllister had, and (2) he had then

concealed the deed from his father by keeping it off from the record, and that, even though McAllister may have been insane at the time, said order appointing an administrator was binding on him and his heirs; that the property belonged to plaintiff's decedent. In reply to the answer of Mrs. Brigham, plaintiff pleaded the alleged adjudication: (1) That she had made no claim of dower until February 19, 1907, but had asserted the ownership of an undivided one-third of the realty under an independent claim of title; and (2) if such dower were set apart, it would award her an estate additional to fee ownership, and her claim should not impair the right of the petitioner to subject the entire estate to the payment of the debts of deceased. On hearing the petition was dismissed, and plaintiff appeals.—*Affirmed.*

*L. H. Salinger* and *B. I. Salinger,* for appellants.

*Jayne & Hoffman,* for appellee.

LADD, J.—The basis of the claim of Culbertson established against the estate of L. P. Brigham was four promissory notes executed to him by the firm of Salinger & Brigham, composed of said Brigham and B. I. Salinger. Action was begun on these notes against the surviving partner March 20, 1896, and later H. C. McAllister was made a party, and recovery sought against him on the ground, as was alleged, that for a valuable consideration he had agreed to sign notes as surety of Salinger and Brigham, and that these should be delivered to Culbertson in the place and stead of all notes then held by him against said firm, and that he failed to perform said agreement, to Culbertson's damage in the amount of the notes sued on. McAllister's answer put these averments in issue, and the petition, as against McAllister, was finally dismissed in 1906. See *Culbertson v. Salinger & Brigham*

*et al.*, 111 Iowa, 447, 122 Iowa, 12 and 131 Iowa, 307. Immediately after the final disposition thereof, the petition in this action was filed.

The reason assigned for the delay is that, had the action against McAllister been successful, payment would have been procured from him, and proceedings against the land of the deceased rendered unnecessary.

1. ESTATES OF DECEDENTS: sale of property: delay of application.

It is also said that land was not of ready sale in 1896, and those entitled thereto have been benefited by such delay through the increase in value of the land from $50 to $75 per acre. But, as seen, the value of the land was ample in 1896 and thereafter to satisfy the claims on which the application to sell was based, and the mere fact that property may increase in value furnishes the officer of court no excuse for postponing an application for an order long beyond the statutory period. Otherwise he might speculate on futures at will and necessarily must be exonerated for delay if in doing so he exercise reasonable foresight. Moreover, the administrator is not authorized to weigh the possible enhancement in value through delay against the probable inconvenience resulting therefrom to the owners of the fee. There was no showing that a sale of the property at an earlier day as in 1898 or any year since would have resulted in sacrifice as in *Conger v. Cook*, 56 Iowa, 117, and like cases. The alleged enhancement in value did not justify the long delay.

Nor do we think the pendency of the action against McAllister justification for the postponement of the application for nearly ten years. It will be observed that deceased was primarily liable on the notes as partner of the firm of Salinger & Brigham, and that action against McAllister was grounded on an alleged breach of contract to become surety for the firm on the same indebtedness. Had Culbertson been successful in that suit and collected of McAllister, the latter would have had a claim against the

estate of Brigham for the amount paid, so that it is not perceived what advantage could accrue to the estate through the delay.

Section 3349 of the Code provides that all claims not filed and allowed within 12 months after the first publication of notice of the appointment of executor or administrator shall be barred unless peculiar circumstances entitle claimant to equitable relief. This statute has been held to apply by analogy to applications for the sale of real estate, and, even where peculiar circumstances are, shown, the application for the order must be within a reasonable time. *McCrary v. Tasker,* 41 Iowa, 255; *Hadley v. Gregory,* 57 Iowa, 157; *Creswell v. Slack,* 68 Iowa, 110; *Minear v. Hogg,* 94 Iowa, 641. In *Conger v. Cook, supra,* a delay of some months was held to be excused by a showing that an earlier sale would have been at great sacrifice. In *Reed v. Reed,* 94 Iowa, 569, the application was made a little more than three years after publication of notice of the administratrix's appointment, and the circumstance that an effort was being made to dispose of land in Nebraska and the procrastination of her attorney afforded sufficient excuse. In *Milburn v. East,* 128 Iowa, 101, a delay of three years was held to be justified by the circumstance that, notwithstanding reasonable diligence, the administrator did not discover the real property owing to the deeds not having been recorded, and upon discovery application for an order of sale was made with reasonable promptness. In the case before us the unrecorded deed from McAllister to Brigham was turned over to the administrator shortly after his appointment, so that he was then advised of this property, and deceased left no other; and the only question is whether the circumstance that one of the creditors whose claim had been established against the estate was attempting to enforce an alleged unexecuted agreement of a third party to become surety on such indebtedness warranted the long delay. Had deceased been

the surety or been charged with a breach of promise to become surety to another against whom an action was pending, there might have been some ground for awaiting the termination of such an action. But here, as said, deceased was primarily liable on the indebtedness, and, even had the action against McAllister been successful, it would have resulted merely in saddling Brigham's indebtedness on the defendant in that case. Section 3394 of the Code requires the administrator to make settlement at the end of three years from his appointment, unless otherwise ordered by court, and this should not be postponed longer save for a better reason than the contingency of the prospective collection of decedent's debt from one who is alleged to have breached a promise to obligate himself as surety. We are of opinion that the application was not made within the time required by law and was rightly dismissed.

II.    Even had timely application for an order of sale been made, the evidence fails to show that Brigham died seised of the land in controversy. He had conveyed it to H. C. McAllister in 1889, and on October 19, 1891, the latter with his wife had signed and acknowledged a deed to the deceased. This was found among the papers of Brigham after his death, and, of course, is presumed to have been delivered on the day of its date, even though not recorded until October 5, 1906. *Hall v. Cardell,* 111 Iowa, 209; *McGee v. Allison,* 94 Iowa, 531.

2. DEEDS: delivery: presumption.

On the 25th of the same month Brigham and wife signed and acknowledged a deed conveying the land back to McAllister. This was found among the papers of McAllister by his guardian in the fall or winter of 1897 after his appointment; McAllister having become of unsound mind. Possession of this deed by McAllister was *prima facie* evidence of its delivery. *Parlin v. Daniels,* 111 Iowa, 642; *Wolverton*

3. SAME: burden of proof.

*v. Collins*, 34 Iowa, 238; *Craven v. Winter*, 38 Iowa, 471. The burden to overcome the same was on plaintiff. *Nowlen v. Nowlen*, 122 Iowa, 541. And this must be by clear and satisfactory evidence. *Hild v. Hild*, 129 Iowa, 649. See *Schaeffer v. Insurance Co.*, 113 Iowa, 656. Failure to record was not enough to overcome this presumption. *Nichols v. Sadler*, 99 Iowa, 429; *Blair v. Howell*, 68 Iowa, 619.

Appellant refers to McAllister's alleged omission to attach to his deposition taken in the action by Culbertson against him the last deed from Brigham, and attaching that executed in 1889 instead. The record contains no such evidence. In the application for the appointment of Coburn as administrator filed January 27, 1897, Culbertson alleged that since the discharge of Brunnier as administrator it had been discovered that deceased owned at the time of his death the land in controversy. Notice that the application would be presented on the 3d day of the January, 1907, term of court, was served on the widow, her children, and H. C. McAllister, and the latter answered and denied that "L. P. Brigham died seised of the premises described in the application," alleged the appointment of Brunnier and the giving of notice thereof, put the indebtedness to the petitioner in issue, and pleaded that his claim was barred because of not filing the same in time. Upon hearing the petitioner introduced a deed signed and acknowledged by McAllister and his wife of the land in controversy to Brigham dated October 19, 1891. It does not appear the deed from Brigham to McAllister made six days later was adduced, and appellant says that from this circumstance it should be inferred that McAllister did not then have the deed. As will hereafter appear, he had then parted with title, and, as he asserted none in himself, it is to be inferred that his only purpose was to put the petitioner to his proof. In these circumstances the inference that he made no claim

4. SAME.

to having acquired title from Brigham ought not to be indulged, for his attitude was not inconsistent with having received the deed at its date and parting with title thereafter. No interest of his would have been served by producing the deed; and the circumstance that he did not do so did not overcome the presumption that it had been delivered.

But it is urged that the last deed to Brigham was in fraud of creditors. He was without means at the time of his death, and, as this occurred but three months after 5. INSOLVENCY: the execution of such deed, it is said that evidence. he could not have received the $9,000 recited therein as the consideration. Subsequent insolvency may be considered as tending to prove insolvency at a prior date, providing the conditions are shown to have continued substantially unchanged. *Campbell v. Park,* 128 Iowa, 181. But no such showing was undertaken, and, in the absence of such proof, conditions once established, though presumed to continue, ordinarily do not relate backwards. *Sigler v. Murphy,* 107 Iowa, 128.

Of course, the circumstance is near enough in time to be entitled to be taken into account, but this should be done in connection with both deeds. For all that appears, he still may have been indebted to the 6. SAME. grantor for the consideration named in the deed from McAllister to him executed six days before, and have made the last deed to cover the amount justly due.

The conveyance is presumed to have been made in good faith and for a valuable consideration, and the circumstances mentioned are not sufficient to overcome such presumption. H. C. McAllister conveyed 7. CONVEYANCES: presumption the land to his son Lucius McAllister in as to good faith: May, 1896. Whether this conveyance was rebuttal. a gift, or to place it beyond the reach of creditors, is of no concern to the creditors of Brigham, or the administrator of his estate.

Nor is plaintiff in a situation to challenge the capacity of McAllister to execute such a deed, even though, without this, the plaintiff might not reach McAllister's property out of which to satisfy Brigham's debts. But McAllister is presumed to have continued sane until the contrary appeared, and the evidence does not establish the serious impairment of his intellect until the fall of 1896. This was long after the execution of the deed to Lucius. Nor is there anything in the record to indicate that McAllister was in such a feeble condition, or so under the control of his son, that any inference of undue influence should be inferred. Lucius McAllister acquired such title as his father then had, and after conveying title to one Dougherty in 1899, and receiving it back in 1903, he deeded it to his sisters Mrs. Burnett and Mrs. Brigham, who still retain the land.

8. FRAUDULENT CONVEYANCES: who may question.

But it is contended that the order appointing the administrator in February, 1897, was an adjudication that Brigham died seised of the land. It may be conceded for the purposes of this case to have been such as to H. C. McAllister. But he had previously conveyed the land to his son Lucius, and, as the latter was not a party to the proceeding, he was not bound thereby. It is argued, however, that the adjudication is binding on Lucius and Mrs. Brigham as heirs of H. C. McAllister. Possibly this is so, but they are not claiming the property by inheritance, but as purchasers. It is said the deed to Lucius is presumed to have been advancement. If so, it passed title prior to the application for the order. As suggested, Lucius acquired no greater rights than his grantor had, but, after acquiring the land, these could not be impaired in an action against his grantor to which he was not a party. See *McGee v. Allison, supra.*

9. JUDGMENTS: parties: who concluded.

It is urged, however, that the adjudication is conclusive as against Mrs. Brigham. She raised no issue on the application to sell. That Brigham owned the land

was asserted merely as a reason of the appointment of an

10. ESTATES OF DECEDENTS: administration: notice.

administrator, and that was all that was prayed. She might assume that the notice was to her as the widow of deceased, and was not bound to anticipate that claims would be allowed, nor to set up her interest in the land until application should be made for its sale.

In any event, she did not acquire the title which she now sets up until six years later through one as to whom there was no adjudication, and for this reason the plea of estoppel must fail. As defendants Burnett and Brigham were owners of the land, the petition was rightly dismissed.—*Affirmed.* ,