VIRGINIA M. JOHNSON et al., Appellants, v. J. D. MOORE et al., Appellees.

**BASTARDS: Right to Inherit.** Evidence reviewed, and held insufficient to show such general, notorious, and public recognition of the paternity of a child as to entitle the child to inherit from the putative father.

**DEEDS: Delivery.** Delivery of a deed is sufficiently shown by the act of the grantor in voluntarily executing the deed and causing it to be recorded, and allowing grantees to go into full possession, even though the grantor, evidently with the thought of protecting in some manner his reserve interest, did not physically hand the deed to grantees.

*Appeal from Taylor District Court.*—H. K. EVANS, Judge.

OCTOBER 18, 1918.

SUIT in equity for the partition of real estate. Plaintiff alleged in her petition that she is the illegitimate child of deceased, and entitled to share in his estate. The facts are stated in the opinion. The court dismissed plaintiff's petition. She appeals.—*Affirmed.*

*Howell, Elgin & Howell,* and *H. P. Jaqua,* for appellants.

*Flick & Flick,* for appellees.

STEVENS, J.—Plaintiff Virginia M. Johnson claims that she was born in Davis County, Iowa, December 30, 1858, as the illegitimate child of Margaret Hopkins and E. W. Moore, deceased. Henry Johnson is her husband. E. W. Moore left Davis County prior to the birth of plaintiff, and settled in Taylor County, where he resided continuously until his death in October, 1915. Margaret Hopkins married one Aaron Jesse Strunk, about six months after the birth of plaintiff.

1. BASTARDS: right to inherit.

Prior to February 19, 1906, E. W. Moore was the owner of the SE¼ and the W½ of the SW¼ of Section 16, and the SW¼ of the SW¼ of Section 15, and the E½ of the SW¼ of Section 27, all in Township 69, Range 34. On the above-named date, he conveyed the SE¼ and 40 acres along the east side of the SW¼ of Section 16–69–34, by warranty deed, jointly to John D. Moore, Jr., G. B. Moore, Mary Ellen Prickett, Hattie Hollis, and Frank Moore, and the SW¼ of the SW¼ of Section 15 aforesaid, by separate deed, to Garrett Moore. The grantees named are his children; the consideration expressed in both deeds is one dollar and love and affection, and in each of said deeds the grantor reserved a life interest in the property conveyed.

Plaintiffs allege in their petition that E. W. Moore gave general, notorious, public recognition to her as his child during his lifetime; that neither of the above deeds was delivered to the grantees therein named; and that she is, as a child and heir at law of E. W. Moore, the owner of, and entitled to, an undivided one-eighth interest in and to all of the above-described real estate. The court below

found against plaintiffs, and dismissed their petition.

I. Numerous witnesses offered on behalf of plaintiffs testified to facts and circumstances tending to show that E. W. Moore was the father of the plaintiff Virginia M. Johnson. From this evidence, we gather that E. W. Moore kept company with Margaret Hopkins for some months prior to his removal to Taylor County, and that it was rumored in the community that they intended to be married. The evidence does not disclose when Strunk came to Davis County, but it was evidently some time prior to the departure of E. W. Moore therefrom. Margaret Hopkins lived with her husband in Davis County until her death, which occurred about sixteen years after the birth of plaintiff.

A witness by the name of Fletcher, who is a brother-in-law of plaintiff Henry Johnson's, testified that he was formerly a partner in the sawmill business with Strunk, and that he was intimate with his family from 1872 to 1879; that he met E. W. Moore and was introduced to him in 1881; and that he had some conversation with him which, in substance, he detailed as follows:

"Mr. Moore asked me if I was a brother-in-law of Henry Johnson (husband of Virginia M. Johnson), and I told him I was. He said he did not know whether or not he would be welcome at Johnson's. He said he would like to call and see Mrs. Virginia M. Johnson, and that she was his daughter, and that he had not seen her since she was about seventeen years old, and was then known as Jennie Strunk."

This was the only occasion when the witness ever saw or had conversation with Moore.

L. A. Burton testified that he married a niece of E. W. Moore's; that, upon one occasion, he asked him whether Henry Johnson's wife was his kid, and that he replied, "They say she was caught in my trap." The plaintiff

Henry Johnson testified that E. W. Moore was at his home on two occasions; that he visited with Virginia alone; and that he heard him say to her: "If it hadn't been for her father, me and your mother would have married."

Virginia Johnson, plaintiff, testified that Moore visited her upon three occasions; that he each time gave her a small sum of money, and told her that he was her father. Dennis Moore, a nephew, who went with him to the home of plaintiff at E. W. Moore's request, testified that he saw him, on one occasion, give her a $5 bill.

Tilman Johnson, a son of plaintiff's, testified that E. W. Moore attended the funeral of his wife's mother, and that, upon that occasion, he said to the witness, "I guess Dunk (meaning his father-in-law) told you I was your grandfather;" that they talked at some length about the family.

Orlena Martin, a sister of Margaret Hopkins', testified that she was 80 years of age; that, about 15 years prior to the time her deposition was taken in this case, she had a conversation with E. W. Moore, in which he told her that plaintiff was his child, and that he was on his road to see her. Other witnesses, most of whom are related to plaintiff, and some of them related to E. W. Moore, testified to circumstances and conversation with Moore, from which they reached the conclusion that he was the father of plaintiff; but he made no direct admission of that fact to them. The record does not disclose the frequency of E. W. Moore's visits to Davis County; but we may assume that all of the evidence in any way bearing upon or tending to prove his recognition of plaintiff that was obtainable was offered upon the trial in her behalf. Several of the witnesses were very old, and others could know only of rumors among the relatives of the families. .

E. W. Moore resided in Taylor County for approximately 58 years, was there married, reared a family in

that county, became prosperous, and appears from the record to have been a reputable citizen. Numerous witnesses who had known him for many years, and with whom he had been intimate, testified that he never referred to plaintiff, or to his having an illegitimate child; that nothing was known about the matter in the community. His family, except two sons, had never heard of plaintiff, or her claimed relationship to their father, until shortly before the commencement of this suit. Two of the defendants testified that, when on a visit to Davis County, Dennis Moore, a cousin, told them that it was rumored in that community that Virginia M. Johnson was their father's child; and one of the boys went to see her, and remained a few minutes. Both of these sons, later, told their father what Dennis Moore had told them, and, upon both occasions, he denied that plaintiff was his child. Some of the testimony of witnesses for plaintiff, relative to conversations with members of the Moore family, particularly that of her children, was denied by them. Strunk recorded plaintiff's birth in the family Bible, correctly stating the date thereof, and giving her the name of Strunk. He died possessed of about $600 worth of personal property. This was divided equally between his remaining children and plaintiff. No administrator was appointed of his estate. J. H. Strunk stated that Virginia had cared for the younger children; after their mother's death; that the amount she received was small; that she had earned it, and they did not want to object thereto. Some of the witnesses testified that Margaret Hopkins told them that Moore was the father of Virginia, and Strunk appears also to have made some confidential claim to that fact. Plaintiff never visited E. W. Moore; but it is claimed that the defendant Frank Moore, shortly after a visit to Davis County, sent a picture of E. W. Moore, Frank Moore, and his mother, taken together, to plaintiff; and, in a letter accompanying

same, made some reference to having the picture of E. W. Moore enlarged.

We have not detailed all of the circumstances or alleged conversations between the witness and E. W. Moore, but what is said above covers substantially all of the material evidence offered upon the trial tending to show the paternity of plaintiff and the recognition of her as Moore's child. The recognition required by Section 3385, Code of 1897, to entitle an illegitimate child to inherit, must be shown to have been general and notorious. We have often had occasion to define these terms. In *Tout v. Woodin*, 157 Iowa 518, we said:

"If, in his intercourse with neighbors, associates, and friends, he makes no attempt to conceal the relationship he bears to the child, but acknowledges it openly, whenever any reference to the subject is made, and this recognition is so often repeated to different people as to evince his willingness that all who care to know the truth may understand that he admits himself the father of the child, we regard it as sufficiently general for the purposes of the statutory rule."

In a very late case, *Trier v. Singmaster*, 184 Iowa 307, Mr. Justice Gaynor, speaking for the court, said:

"A recognition fully and fairly made, leaving a lasting impression on the minds of those with whom the putative father comes in contact in his daily and social life, remains as a permanent recognition. It need not have been universal, or so general and public as to have been known by all. If his conduct among his neighbors and associates and friends be such that it reveals a purpose to make known, rather than to conceal, the true relationship he bears to the child, it is sufficient, though there be no spoken word. General recognition, once clearly shown to have been made, establishes the fact upon which, under the statute, the right of the illegitimate child rests, though later there may

appear a studied effort to repudiate such relationship. The later conduct must be viewed in the light of the changed conditions. A general and notorious recognition does not necessarily mean a continuous recognition, covering the whole period up to and including the time of the death of the putative father. A recognition clearly shown to have been once deliberately and publicly made, under circumstances that reveal no apparent motive to conceal, meets the requirements of the statute. *  *  *. Where the conduct is open and notorious, and can be accounted for upon no rational hypothesis except a desire to meet and assume the responsibility which legitimately follows the act charged against the putative father, it amounts to a recognition of the obligation and the recognition of the relationship out of which the obligation arises."

Not once, during all of the 57 years that E. W. Moore resided in Taylor County, is he shown to have stated, publicly or privately, to any of his neighbors or intimate friends, that he was the father of plaintiff, or of an illegitimate child; and no one residing in that community, except as above stated, had ever heard of plaintiff prior to shortly before the commencement of this suit. So far as E. W. Moore was concerned, if he were, in truth, plaintiff's father, nothing was done by him during all of that period to apprise his intimate friends and neighbors, or his family, of the alleged paternity of plaintiff, or to give general and notorious recognition in that community to plaintiff's claimed paternity; but, during all of said years, he concealed that he was her father, as well as any and all rumors to that effect among friends and relatives in Davis County. He made only occasional visits to Davis County after he left there, and only upon a few occasions, as shown by plaintiff's testimony, admitted that he was the father of plaintiff, or made statements from which such inference was possible. It is true that he would be more likely to

discuss his alleged relationship to plaintiff in the community where she lived, and among friends and relatives who might know something about the facts, or had heard rumors of his relations with Margaret Hopkins, than in a community in which nothing was known, and where his life was free from gossip and scandal. But he commenced his residence in Taylor County before plaintiff's birth, and continued to reside there until his death. The occasions upon which it is claimed that he admitted plaintiff was his child, or talked about her in a way to leave that impression among those with whom he talked in Davis County, were few, and far from general. He did not openly and frankly admit that plaintiff was his child, or talk indiscriminately with friends and relatives about it; and, during most of the 57 years he lived after he moved to Taylor County, he was silent to the members of his family, his neighbors, and intimate friends about the matter; and, when approached by his sons with what Dennis Moore had told them, denied relationship to plaintiff. There was no general and notorious recognition of plaintiff during his lifetime as his child, and she has no interest in his estate. *Watson v. Richardson,* 110 Iowa 673; *McCorkendale v. Mc-Corkendale,* 111 Iowa 314; *Duffy v. Duffy,* 114 Iowa 581; *Brisbin v. Huntington,* 128 Iowa 166; *Murphy v. Murphy,* 146 Iowa 255; *Hays v. Claypool,* 164 Iowa 297; *McNeill v. McNeill,* 166 Iowa 680.

II. Concerning the execution and delivery of the deeds above referred to, John D. Moore, one of the defendants, testified that he was present at the office of Mr. Burrell, the scrivener who prepared them, at the time they were written, and when they were signed by E. W. Moore; that Mr. Burrell stated that it was necessary that a consideration be paid; that he thereupon paid his father $10; that the grantees took possession of the land, claiming to be the owners

2. DEEDS: delivery.

thereof, cultivated, and, to some extent, improved it, but, until their father's death, paid him some rent. The scrivener testified that he prepared the deeds at the request of E. W. Moore; and, as directed by him, forwarded the same to the county recorder for record, and had them returned to him. He retained them in his possession until they were produced on the trial. The witness further testified that the grantor told him to keep them until further orders, and stated, in answer to a leading question, that Moore said he desired the deeds recorded, in order that it might appear to the public that he had conveyed his real estate. One of the defendants testified that she heard her father tell her sister that he had deeded the land to the children. None of the grantees had possession of the deeds; but, as the life use of the land was reserved in the grantor, it is probable that he deemed it important that the deeds be kept with the scrivener until after his death; but that he intended to transfer title to the land to the grantees, would seem to admit of no reasonable doubt. The name of one of his sons was omitted from the joint deed by mistake, but the grantees named joined in a joint deed to him after their father's death, conveying to him an equal share in the land. Delivery is presumed from the voluntary execution and recording of the instruments, and no sufficient evidence was offered to overcome this presumption. *Robinson v. Gould,* 26 Iowa 89; *Craven v. Winter,* 38 Iowa 471; *In re Estate of Bell,* 150 Iowa 725; *Stiles v. Breed,* 151 Iowa 86; *Burch v. Nicholson,* 157 Iowa 502; *Tucker v. Glew,* 158 Iowa 231.

The court below found that the deed was delivered; and, while the matter may never have been discussed between the father and some of the children, their acceptance of the conveyance may be presumed, from the beneficial interests conveyed thereby. *Robinson v. Gould,* supra; *Craven v. Winter,* supra; *In re Estate of Bell,* supra;

*Stiles v. Breed,* supra; *Burch v. Nicholson,* supra; *Tucker v. Glew,* supra.

E. W. Moore, on May 12, 1911, executed a will; but, as he had conveyed all of his property to his children, objections were filed to the probate of the will by all of the defendants named herein, except Frank Moore, whose whereabouts were, at the time of the trial, unknown. It was also agreed among the legatees named in the will that the testator was not, at the time of its execution, mentally competent to dispose of his property. The will was, therefore, denied admission to probate.

We have carefully read and considered the evidence relating to the claimed recognition of plaintiff as his child by E. W. Moore, and also respecting the delivery of the deeds; and while, if the only question presented were of the paternity of plaintiff, the evidence offered might possibly be sufficient to justify the inference that E. W. Moore was the father of plaintiff, it falls far short of showing the recognition required by statute.

The conclusion of the trial court meets with our approval, and the judgment below is—*Affirmed.*

PRESTON, C. J., WEAVER AND GAYNOR, JJ., concur.